In re John F. LALLO.

No. 2000–515–M.P.

Supreme Court of Rhode Island.

April 3, 2001.

J. Renn Olenn, Warwick, for Plaintiff.

John A. MacFayden, III, Providence, Robert Senville, Rumford, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on January 30, 2001, pursuant to the petition of John F. Lallo (respondent), an associate judge of the Administrative Adjudication Court (AAC), to review the proceedings and recommendation of the Commission on Judicial Tenure and Discipline (commission) with respect to allegations that respondent committed serious violations of Article VI of the Supreme Court Rules of Judicial Conduct. This Court, having heard the arguments of the commission and respondent and reviewed the Report and Recommendation (report) of the commission, as well as memoranda submitted by the parties, accepts the recommendation of the commission for the respondent's removal as an AAC judicial officer and for the imposition of a monetary sanction, but remands the case to the commission for a more accurate calculation of the amount of money that respondent shall be required to reimburse the people of this state.

## Facts and Travel

On October 5, 2000, the commission notified respondent, in accordance with G.L. 1956 § 8–16–4(c), that substantial evidence existed to support charges of violations of

the Code of Judicial Conduct. Specifically, the commission cited his indictment and subsequent conviction for a felony offense in the United States District Court for the District of Rhode Island. Additionally, respondent was alleged to have been chronically absent during the judicial day while engaging in conduct demeaning to his judicial office; to wit, gambling at a public casino. On October 18, 2000, respondent, through counsel, filed an answer and admitted that, while a sitting judge, he knowingly made a false statement under oath in connection with a personal bankruptcy petition, and further, that on September 7, 2000, he entered a plea of guilty to a violation of 18 U.S.C. § 1623, "False declarations before grand jury or court." The respondent also admitted that, at various times between the hours of 8:30 a.m. and 4 p.m., on the sixty-six days referenced in the notice by the commission, he abandoned his judicial post to gamble at Foxwoods Resort Casino (Foxwoods or casino), in Ledyard, Connecticut. Before the public hearing scheduled for November 20, 2000, pursuant to the commission's interpretation of Rule 20 of the Rules of the Commission on Judicial Tenure and Discipline (Rule 20), the commission and respondent agreed that respondent would waive a public hearing, admit to the allegations contained in the notice, and present matters of mitigation in a private proceeding before the full commission.[1]

The report of the commission supplied the facts pertinent to this case. The respondent was an Associate Judge of the AAC from 1978 through his retirement, in 1998. The AAC did not become a part of the state judicial system until 1993. The AAC is administered by its Chief Judge, who designated the calendars upon which the associate judges sat and distributed the workload. As an associate judge, re-

---

1. We note that the approval of the Supreme Court never was sought in this case before the commission and the respondent implemented the above-referenced agreement. We recognize that the commission has interpreted Rule 20 of the Rules of the Commission on Judicial Tenure and Discipline to mean that negotiation and resolution with respect to the admissions and waiver of the public hearing would occur *before* Supreme Court approval is sought. We do not agree with this interpretation, and shall discuss it *infra*.

spondent was categorized as a "non-standard employee," who was required to work a minimum of thirty-five hours per week under the terms and conditions established by the Chief Judge. As a matter of practice, the calendars in the AAC were called at 9 a.m., 11 a.m., and 2 p.m. The associate judges normally sat a maximum of four days a week; when an associate judge was not sitting, however, he or she was expected to report to the Harris Avenue facility to perform duties at the direction of the Chief Judge.

The commission conceded that by all accounts respondent worked diligently; he often arrived at the courthouse early and completed most of his paperwork before 8:30 a.m. The respondent always completed his caseload and often sat for other judges when they were on vacation or were otherwise unavailable. When his calendar was completed, however, whether in the morning or afternoon, respondent departed, apparently for the day. The quality of respondent's work was never questioned in any complaints filed with the commission in his twenty years of service as an associate judge until the instant proceeding.

The notice compiled by the commission alleged, and respondent admitted, that on sixty-six occasions between 1993 and 1997, respondent was gambling in public, at Foxwoods, between the hours of 8:30 a.m. and 4 p.m., when the AAC was in session and he was not on vacation. Records from the casino indicated that respondent was present and gambling on these sixty-six occasions, routinely in the early afternoon. In addition to his admitted gambling addiction, respondent suffered serious financial reverses that gave rise to his financial difficulties. As the result of a failed real estate investment, respondent filed a voluntary bankruptcy petition. In connection with this petition, respondent signed, under the pains and penalties of perjury, a statement of financial affairs (statement), and he claimed that he had made no payments in excess of $600 to any of his creditors within ninety days of the filing of the petition. It was determined that he had, in fact, made such payments to five separate creditors.

On April 5, 2000, a federal grand jury returned a four-count felony indictment against respondent, alleging the misrepresentation made on the statement—that he was accused of repeating in a more general averment and then again, under oath, on two occasions—was in violation of 18 U.S.C. §§ 152(2)(3) and 1623. On September 7, 2000, respondent pled guilty to making a false material declaration in the statement; all other counts were dismissed. On December 1, 2000, respondent was sentenced to a term of two years probation, the first six months to be served in home confinement. He was allowed to leave his home for medical appointments and religious services only, with the prior approval of the United States Probation Department. As a further condition of probation, respondent was ordered to avoid gambling and gambling establishments.

In its report, the commission concluded that a "substantial sanction, in addition to the mandated removal" necessitated by the felony conviction, was warranted in this case.[2] The unanimous recommendation of the commission was that respondent reimburse the people of the State of Rhode Island in the amount of $28,000, representing his entire salary for those days on which he left the AAC to gamble at Foxwoods while the AAC remained open for judicial business.[3] It is this recommendation for the imposition of a monetary sanction from which respondent seeks this Court's review.[4]

---

**2.** Although the commission also recommended removal, respondent has not appealed that portion of the recommendation.

**3.** Commission members Theresa Paiva Weed, Esq. and Raymond Marcaccio, Esq., did not participate in the recommendation.

**4.** General laws 1956 § 8–16–6(a) provides:

## Discussion

In his petition for review of the report of the commission, respondent has advanced several arguments to this Court. First, he argued that the $28,000 sanction recommended by the commission is not civil in nature, but rather is a penal sanction in the nature of a fine and therefore amounts to a punishment, a remedy that is not within the jurisdiction of the commission. Next, respondent contended that the commission exceeded its statutory authority and deprived him of the right to a jury trial before the imposition of a penal sanction. Finally, respondent argued that the legislative grant of authority to recommend removal does not include the authority to impose a monetary sanction. In addition to the arguments made by respondent, Operation Clean Government (OCG) has requested that this Court order the release of any transcript taken at the commission meeting at which respondent presented arguments in mitigation of the monetary sanction.

## Monetary Sanctions

■ We shall first discuss the arguments of respondent that challenge the authority of the commission, and ultimately, this Court's authority to impose a civil sanction in a disciplinary action. It is well settled that the authority of the Supreme Court to discipline the members of the bar, including judges, is plenary in nature. *See In the Matter of Almeida,* 611 A.2d 1375, 1382 (R.I.1992);

"The supreme court may on its own motion and shall upon petition of a judge who has been adversely affected by a recommendation of the commission review the record of the commission's proceedings on the law and on the facts and may, for the purposes of the review, permit the introduction of additional evidence and shall have the power to subpoena witnesses and administer oaths. The supreme court may, upon review of a recommendation of censure, suspension, immediate temporary suspension, reprimand, retirement or removal, affirm, modify, or reject the recommendation of the commission."

*see also Rhode Island Bar Association v. Automobile Service Association,* 55 R.I. 122, 179 A. 139 (1935) (stating that the power is inherent in the judiciary to protect the public and the jurisdiction of the Court). The Court exercises this power based upon the *recommendations made* by the commission. Pursuant to § 8–16–4(b), upon receiving a verified complaint that a judicial officer of this state has violated the Canons of Judicial Ethics, the commission shall make a preliminary investigation to determine whether formal proceedings are warranted. If this preliminary investigation discloses that an allegation of judicial misconduct or unfitness is supported by substantial evidence, the commission shall direct that a public hearing thereon shall be held; and the judge shall be notified of the investigation, the nature of the charges and the time and place of such hearing pursuant to § 8–16–4(c). Upon completion of the public hearing, the commission may recommend to the Supreme Court the imposition of various disciplinary actions. The recommendations available for the commission in its report to this Court are set forth in § 8–16–4(e).[5] Included in that list is removal. We have previously held that,

"the authority to recommend removal from office implicitly carries with it the authority to recommend remedial measures necessary to effectuate the statute * * *. The [c]ommission's recommendations are, in fact, only recommendations that provide guidance and assistance to this [C]ourt in its determination

**5.** Section 8–16–4(e) provides:

"Upon completion of the hearings, the commission may dismiss the case on the ground of insufficiency of proof or may recommend to the supreme court the censure, suspension, immediate temporary suspension, reprimand, retirement, or *removal from office* of the judge under investigation; provided, however, that the recommendation for the removal of a justice of the supreme court shall be subject to the provisions of § 8–16–7(b). For the purposes of this chapter, wherever the word 'judge' appears, it shall be construed to include probate judges in the cities and towns of this state." (Emphasis added.)

of the appropriate course of action. The [c]ommission acts, therefore, as a reference source for this court on the issue of removal of and imposition of penalties upon a member of the Judiciary." *In the Matter of Almeida*, 611 A.2d at 1381. Section 8–16–6(a) specifically provides that "[t]he supreme court may, upon review of a recommendation of censure, suspension, immediate temporary suspension, reprimand, retirement, or removal, *affirm, modify, or reject the recommendation of the commission.*" (Emphasis added.)

■ This Court has plenary authority to impose sanctions upon members of the bar, including judges. Included in that power is the authority to modify the commission's proposed disposition and to impose sanctions that we deem more appropriate, including ones that are not specified in § 8–16–4(c). *In the Matter of Almeida*, 611 A.2d at 1381–82. Clearly, the Court's power to discipline supersedes the authority of the Commission to recommend disciplinary action. In this matter, respondent has admitted that on some sixty-six occasions he was absent from his assigned courtroom at the AAC, so he could gamble at Foxwoods. The commission suggested that respondent reimburse the state for the time that respondent was paid while he was not at work. We are satisfied that this recommendation by the commission amounts to a civil sanction in the nature of restitution that is consistent with its "authority to recommend remedial measures necessary to effectuate the statute." *Id.* at 1381. In any event, this is a sanction that this Court has the authority to impose. We disagree with respondent's contention that a monetary sanction is punitive in nature or that it is a fine for which he is entitled to a jury trial. This disposition has been recommended by the commission as reimbursement to the taxpayers of the State of Rhode Island, who were deprived of his services while he regularly shirked his responsibilities and headed to Foxwoods during the work day. Accordingly, we conclude that the monetary sanction is civil and restitutionary in nature and is not punitive.

■ Although we commend the commission for its attempt to recommend an appropriate sanction for respondent's misconduct, we are not satisfied that the calculation of the value of services for which the taxpayers were shortchanged was appropriate. The commission has acknowledged that the $28,000 figure was a "rough calculation" of the value of the services, and represents respondent's entire salary for what has been described by the commission as absence during the "judicial day." Although we are mindful of the fact that the "judicial day" is a term that does not necessarily correspond with the hours that a court is open to the public, it is clear that respondent's conduct, in regularly absenting himself from his courtroom during normal working hours and engaging in the pastime of gambling in a public casino, was unacceptable and has cast disrepute on his judicial office. Throughout this proceeding, respondent has continued to insist that gambling is a legal activity. Although he may be correct in this assertion, it is unseemly conduct for a judicial officer regularly to gamble in a public casino during the normal working hours for that particular court. However, the record is clear that on the days that respondent absented himself from the AAC and traveled to Foxwoods, he first completed his calendar and any other work assigned to him by the Chief Judge and often arrived at his post as early as 7 a.m. Therefore, we uphold the imposition of a monetary sanction in the nature of restitution, but remand the matter to the commission for a more accurate calculation of the amount of restitution in light of the fact that in various instances respondent's absence from court for gambling caused him to miss only a portion of the days in question. In that recalculation, however, the commission may, in its discretion, include or factor in

an element for the cost of prosecution of this case.

### Release of Transcript

Before addressing the issue of the release of the transcript, it is necessary to address the commission's interpretation and application of Rule 20.[6] The law in Rhode Island is well settled that an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency. *In re Advisory Opinion to the Governor*, 732 A.2d 55, 76 (R.I.1999); *Pawtucket Power Associates Limited Partnership v. City of Pawtucket*, 622 A.2d 452, 456 (R.I.1993); *Defenders of Animals, Inc. v. Department of Environmental Management*, 553 A,2d 541, 543 (R.I.1989) (attributing great weight to an agency's construction of a regulatory statute when the provisions of the statute were unclear); ("[I]ndeed, even when the enabling provision(s) empowering an agency to adopt regulations is unclear, we still are required to accord great deference to the agency's interpretation of its authority to act.") "[W]here the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized." *Gallison v. Bristol School Committee*, 493 A.2d 164, 166 (R.I.1985).

As stated previously, the commission has interpreted Rule 20 as mandating this Court's approval of its decision to waive a public hearing only *after* the

respondent has admitted to the allegations and *after* he or she has appeared at a closed hearing held before the commission in mitigation of whatever sanction the commission may recommend. This Court is mindful that the members of the Commission on Judicial Tenure and Discipline give exemplary service to the Judiciary and the people of the state by donating a great deal of time and energy to the expeditious handling of difficult cases. However, based upon a careful review of the commission's enabling legislation, chapter 16 of title 8, and Rule 20, we have determined that this Court's approval of any decision by the commission to waive a public hearing is necessary *before* such a waiver can be effective and *before* the commission can conduct any closed hearing with the respondent judge concerning what sanction(s) the commission may recommend. *See In re O'Brien*, 650 A.2d 134, 135 (R.I. 1994). Moreover, the commission cannot agree to waive the public hearing required by § 8–16–4(c) until the respondent judge formally admits to the allegations "as a consent" to the commission's recommended sanction. The respondent's admission and consent to the commission's recommended sanction should occur before the commission waives the public hearing requirement and before it communicates to this Court its request for approval of its decision to waive a public hearing. Further, it is only after the approval by this Court of the commission's waiver of a public hearing that a respondent's appearance before the commission, if any, for the purpose of requesting the commission to mitigate its recommended sanction may be closed to the public.[7] Accordingly, when-

6. Rule 20 provides:

"**Prehearing admission by judge.**—Whenever the respondent, prior to the commencement of a public hearing, admits to said allegations or violations, as a consent to the Commission's recommendation of reprimand, censure, suspension, removal, or retirement, the public hearing may be waived by the Commission, subject to the approval of the Supreme Court. The Commission shall make recommendations to the

Supreme Court based on the respondent's admissions. The respondent's admissions, the Commission's findings and recommendations shall be public. The Supreme Court's order shall also be public."

7. Obviously, this procedure envisions the possibility that the commission's recommended sanction may be amended before its final "determination recommending the reprimand, censure, suspension, immediate temporary

ever a judicial officer elects to admit to the allegations or violations *and* to consent to the commission's recommended sanction, this Court's approval of the commission's proposed waiver of the public hearing must be obtained before any closed hearing shall proceed.

■ We now turn to the request by OCG to make public the transcript from the hearing that was held on October 18, 2000, so that respondent and his attorney could present to the commission "matters in mitigation" of the charges in the complaint. This is a question of first impression for this Court. OCG has claimed that the transcript of the proceeding that culminated in the recommendation of removal and of a monetary sanction now before the Court is a public record. Rule 20 provides in relevant part that, "[w]henever the respondent, prior to the commencement of a public hearing, admits to said allegations or violations, *as a consent to the Commission's recommendation of [a particular sanction]*, the public hearing may be waived by the Commission, *subject to the approval of the Supreme Court.*" (Emphases added.) Thereafter, "[t]he Commission, shall make recommendations to the Supreme Court based on the respondent's admissions. *The respondent's admissions, the Commission's findings and recommendations shall be public."* *Id.* (Emphasis added.)

In this case, however, the respondent never admitted to the violations as a consent to the commission's recommended sanctions. Indeed, to this day respondent objects to the commission's recommendation of a monetary sanction and has challenged the commission's authority to make such a recommendation. Clearly, under these circumstances, respondent was not entitled to seek a waiver of the commission's public hearing mandate pursuant to the limited provisions contained in Rule 20. Moreover, this Court never approved any waiver by the commission of its obligation to hold a public hearing on the charges.

Thus, the preconditions set forth in Rule 20 for waiving the public-hearing requirement never were complied with in this case. For this reason, respondent's October 18, 2000 appearance before the commission—purportedly in mitigation of the commission's recommended sanctions— does not enjoy the limited protections afforded by Rule 20.

Accordingly, once the commission decided to recommend to this Court that certain sanctions should be imposed against respondent, it was obliged to file those recommendations, together with the transcript of its proceedings, with the Chief Justice of this Court. Upon doing so, those records became public documents. Thus, § 8–16–5 provides as follows:

> "*Whenever the commission shall make a determination recommending the reprimand, censure, suspension, immediate temporary suspension, removal, or retirement of a member of the judiciary, it shall file forthwith a copy of the recommendation, certified by the chairperson, together with the transcript and the findings and conclusions, with the chief justice of the supreme court,* and the commission shall forthwith give the member of the judiciary written notice of the filing, together with a copy of its findings and recommendations. The notice shall be mailed to the chambers of the judge or to his or her last known place of residence or may be personally delivered to him or her by a member of the commission. *The transcript and the findings, conclusions, and recommendation of the commission shall be public documents,* except when they relate to a hearing concerning a private reprimand pursuant to § 8–16–4(d), in which case they shall be kept confidential." (Emphasis added.)

The commission's rules also require that when, as here, the commission has voted to recommend that action be taken against the respondent judicial officer, it must file

suspension removal, or retirement of a member of the judiciary," pursuant to § 8–16–5.

a transcript of its proceedings with the Chief Justice of the Supreme Court. *See* Rule 29 of the Rules of the Commission on Judicial Tenure and Discipline. After it does so, "[*t*]*he transcript* and the findings, conclusions and recommendation of the Commission *shall be public documents,* except when they relate to a hearing concerning a private reprimand, in which case they shall be kept confidential." *Id.* (Emphasis added.) Given these provisions and the fact that the transcript of the commission's proceedings concerning respondent was not protected by Rule 20 and did not relate to a private reprimand, we are of the opinion that the transcript of the October 18, 2000 proceeding, together with "the findings, conclusions, and recommendation of the commission shall be public documents," as required by § 8–16–5 and by commission Rule 29.

In so ruling, however, we confirm that, pursuant to § 8–16–13, the commission is "expressly authorized and permitted to conduct closed meetings for the conduct of all of its business other than public hearings held pursuant to § 8–16–4(c)," and that "[a]ll evidence obtained by the commission, and all evidence that the judge obtains from the commission through discovery or otherwise, shall remain confidential until it becomes the subject of testimony at the public hearing or is introduced into evidence at the public hearing." Section 8–16–13. Thus, any commission meetings and/or hearings held in connection with its preliminary investigations of complaints against members of the Judiciary or in connection with private reprimands pursuant to § 8–16–4(d), "shall not be open to the public, and all evidence and proceedings relating to the private reprimand shall be kept confidential." In this case, however, the hearing held on October 18, 2000, did not involve a private reprimand, was not part of the commission's preliminary investigation, and occurred *after* the commission had determined that the charges against respondent were supported by substantial evidence and *after* it had directed that a public hearing be held there-

on. In these circumstances, in the absence of prior approval by this Court and the respondent's consent to the commission's recommended sanctions, the commission was not at liberty to conduct a private hearing in mitigation of any recommended or suggested sanctions. We recognize that the commission has interpreted Rule 20 to allow it to waive a public hearing without our prior approval. In deference to this prior interpretation by the commission, we shall make our ruling applicable only to the case at bar and to all subsequent cases that shall arise after the date of this opinion. *See Haddad v. First National Stores, Inc.,* 109 R.I. 59, 67, 280 A.2d 93, 98 (1971); *Rampone v. Wanskuck Buildings, Inc.,* 102 R.I. 30, 35, 227 A.2d 586, 589 (1967).

For the aforementioned reasons, (1) we accept the commission's recommendation that respondent be removed as a judicial officer of the AAC and that a monetary sanction be imposed against the respondent to reimburse the public for the approximate cost of his wrongdoing; (2) we deny the respondent's request for this Court to reject the recommendation, of the commission pertaining to the imposition of a monetary sanction; and (3) we remand this matter to the commission for a more accurate determination of the value of services and a recalculation of the recommended monetary sanction. After doing so, the commission's report and recommendation with respect to the recalculated sanction shall be returned forthwith to this Court for our consideration. In addition, we grant the request of OCG for a copy of the transcript made at the hearing conducted by the commission on October 18, 2000, because respondent is not entitled to the protections afforded by Rule 20 and, therefore, that document is part of the records that "shall be public" under § 8–16–5 and Rule 29 of the Rules of the Commission on Judicial Tenure and Discipline after the commission has filed with the Chief Justice of this Court a copy of its

recommendation that a sanction be imposed against a member of the Judiciary.

Chief Justice WILLIAMS did not participate.