[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is the appeal of Alan S. Cameron ("appellant") of the January 9, 2003 administrative agency decision issued by the Department of Business Regulation ("DBR"). The decision ordered appellant to pay a civil penalty of $1,500 after having been found in violation of G.L. 1956 §5-20.5-14(a)(16) and G.L. 1956 § 5-20.5-10(b). Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 FACTS AND TRAVEL
Appellant is the principal broker at Cameron Lillibridge, a real estate agency located in East Greenwich, Rhode Island. As a principal broker, the law imposes upon Mr. Cameron an obligation to supervise the agents who work with him, one of whom is Kevin O'Neil ("O'Neil"), appellant's son-in-law, as well as a real estate agent.
It is the practice of the DBR to send inspectors into real estate offices to examine the certification of the realtors. G.L. 1956 § 5-20.5-7 and CRIR 02-040-012, Regulation 11, Rule 11. One such supervisory visit was made by the DBR at Cameron 
Lillibridge offices in 1999. Although the DBR records indicated that Mr. O'Neil's license had expired, there was a valid renewal sticker on the license displayed in appellant's office. Tr. at 1. After O'Neil received a letter from DBR regarding this violation, he called the DBR to get it "straightened out". Tr. at 6. It was thereafter determined that DBR had an error in its records. O'Neil had found the cancelled checks utilized to pay for the subject renewal, sent them to DBR as proof of renewal, and thought the incident was closed. Tr. at 8.
Another inspection was performed by the DBR in December 2000. This time, there was no sticker on O'Neil's license and no indication that it had been appropriately renewed at the end of April, 2000.[1] At the hearing, O'Neil stated that he requested the inspector's advice as to how to proceed and was told not to do anything — that "if there's a problem, they'll [DBR] let [him] know." Tr. at 6. The DBR did, in fact, alert O'Neil that there was a problem in a letter of January of 2001, and also so informed appellant. Tr. at 6.
Upon receipt of the letter, O'Neil called the DBR and spoke to someone who "indicated to [O'Neil] that [he] needed to send in a check for $80 for license and a $10 late fee," along with the appropriate proof of continuing education and errors and omissions coverage. Tr. at 6-7. It was established during that conversation that O'Neil had never received a renewal card because of an address change, and that DBR would forward a new one to the current address. O'Neil advised appellant of what had transpired. Appellant, who was familiar with the confusion only a year before, assumed that O'Neil could and would take care of the situation. "[T]he history in this instance comes into this whole situation. The fact that he got the same letter in 1999 and it turned out to be the Department's error and then again the next year he gets the same letter over again, that all came into this." Tr. at 13.
On March 5, DBR sent another set of letters to appellant and O'Neil inquiring about the renewal. Appellant again discussed the situation with O'Neil, who assured him that he was working to remedy the problem. Subsequent to receiving the renewal card from the DBR, O'Neil gathered the appropriate information and forwarded it to the DBR on March 23, 2001. Tr. at 8. At that time, O'Neil again thought the problem was resolved. Id.
The DBR was silent on the matter until June, when Ms. Voccio, the administrator of the DBR's real estate section, called O'Neil and told him that he owed $500 for a second licensing offense, as his license had not been renewed in April, 2000. DBR had, in fact, received his renewal fee and forms in March, yet had neither cashed the check nor processed the renewal. Upon further inquiry, O'Neil learned that DBR was considering its own clerical mishap of 1999 as evidence of O'Neil's first offense. The administrator, when reminded of the error, however, acknowledged that it had not been O'Neil's error. She nonetheless reiterated that O'Neil would still need to pay $500. Tr. at 9.
O'Neil testified that rather than being unable to work for 60 days pending a hearing regarding the penalty, he simply signed a consent order at the DBR which purported to settle the matter, as long as he paid the $500 penalty and complied "with all other statutory requirements." Order at 2. There was no explanation of the three-month delay in responding to O'Neil's renewal request.[2]
On November 1, 2001, the DBR issued a "Show Cause" Order to appellant, asserting that he had violated G.L. 1956 §5-20.5-10(b) and G.L. 1956 § 5-20.5-14(a)(16). A hearing was held on December 12, 2001, and the decision was issued on January 9, 2003.[3]
In that final decision, the hearing officer acknowledged the DBR's role in the licensing confusion, stating that "a certain degree of blame rests with the Department itself." Decision at 6. The hearing officer, however, found that appellant was remiss in not following up and responding to the DBR's letter of March 5. Due to that lapse, the hearing officer found a violation of G.L. § 5-20.5-14(a)(16).
Additionally, in his conclusions of law, the hearing officer found that appellant violated R.I. Gen. Laws § 5-20.5-10(b) by paying compensation to O'Neil when he was not licensed as a real estate salesperson. Decision at 9. Based on his findings of fact and conclusions of law, the hearing officer imposed a civil penalty of $1,500. The appellant filed this timely appeal.
 STANDARD OF REVIEW
Pursuant to G.L. 1956 § 5-20.5-16 and G.L. 1956 § 42-35-15(g), this Court possesses appellate jurisdiction of the decision of the DBR. The latter statute states in pertinent part:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency, or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The legislative intention underlying this statute provides that the court ought not to substitute its judgment on questions of fact for that of the respondent agency. The court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record."Milardo v. Coastal Resources Management Council, 434 A.2d 266,272 (R.I. 1991). Further, a court should not substitute its judgment for that of the agency with respect to the credibility of witnesses or the weight of the evidence concerning questions of fact; however, questions of law are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts. Carmody v. Rhode Island Conflict ofInterest Comm'n, 509 A.2d 453 (R.I. 1986). An administrative decision may be vacated if it is clearly erroneous in view of the reliable, probative, and substantial evidence contained in the whole record. Costa v. Registrar of Motor Vehicles,543 A.2d 1307 (R.I. 1988). When reviewing an agency's interpretation of a statute, the court ordinarily defers to the agency "only in cases where the words are unclear or subject to more than one reasonable interpretation. Such deference is also inappropriate where an agency's interpretation of a statute is clearly erroneous or unauthorized by law." In re: Lallo, 768 A.2d 921
(R.I. 2000).
 UNLAWFUL EMPLOYMENT OR COMPENSATION
The initial violation alleged by the DBR was grounded upon G.L. 1956 § 5-20.5-10 (b), which is titled "Non-resident brokers — Employment of unlicensed brokers restricted — Non-resident salesmen — Service of process." The relevant portion states in its entirety:
 "It is unlawful for any licensed real estate broker to employ or compensate directly or indirectly any person for performing any of the acts regulated by this chapter who is not a licensed real estate broker or licensed real estate salesperson; provided, that a licensed real estate broker may pay a commission to a licensed real estate broker of another state; provided, further, that the non-resident real estate broker does not conduct in this state any of the negotiations for which a fee, compensation, or commission is paid."
Appellant argues that there was no evidence introduced at the hearing that he, in fact, employed or compensated O'Neil in his capacity as a real estate salesperson during the relevant time period. Therefore, he contends that there is no evidence upon which the DBR can base its findings, and the charges should be dismissed.
The DBR responds that O'Neil signed a consent order and paid $500 in order to obtain his license renewal more quickly. He had stated at the hearing that his reasons for signing that consent order rather than waiting for a hearing were based on the need to support his family. Therefore, the DBR argues, it is reasonable to conclude that O'Neil was compensated by appellant during the time that he was not licensed.
The hearing officer's charge in Finding of Fact (6) states: "Alan S. Cameron paid compensation to Kevin O'Neil when he was not licensed as a real estate salesperson." The transcript of the hearing, however, is bereft of any testimony that appellant had, in fact, paid O'Neil. While the rules of evidence are somewhat flexible in administrative proceedings, unsupported conclusions are impermissible. "Although the administrative tribunal need not explain in detail how much weight was given to different pieces of evidence, a "logical bridge" must be built between the evidence presented and the conclusion reached by the tribunal."Nissan of Smithfield v. Dolan, 2001 WL 770907 (citing Koch,Administrative Law and Practice, § 5.64(1) at 226)). There was no competent evidence introduced at the hearing to support the fact that Cameron compensated O'Neil during the period during which his license had lapsed. Such evidence is necessary to provide a "logical bridge" and thereby to support a charge under G.L. 1956 § 5-20-5-10(b). Accordingly, the hearing officer's finding is clearly erroneous and cannot stand.
 ADEQUATE SUPERVISION
General Law § 5-20.5-14(a)(16) states:
 ". . . The director has power to refuse a license for cause or to suspend or revoke a license or place a licensee on probation for a period not to exceed one year where it has been obtained by false representation, or by fraudulent act or conduct, or where a licensee, in performing or attempting to perform any of the acts mentioned in this chapter, is found guilty of:. . . . [i]n the case of a broker licensee, failing to exercise adequate supervision over the activities of his or her licensed salesperson within the scope of this chapter if the broker has knowledge of any misdeeds of his or her sales staff." (Emphasis added.)
Appellant argues that the statute requires that the supervising broker must have knowledge of the agent's alleged misdeeds. Whether appellant had such knowledge was not addressed at the hearing. Appellant also contends that there is no evidence in the record that O'Neil committed any misdeeds. Appellant was aware of the letters between his agent and the DBR, and he was under the impression that the situation was "all set," and that O'Neil's license was being renewed. Tr. at 7.
The DBR hearing officer found that a supervising broker serves as a "gatekeeper." In that capacity, the hearing officer opined, it was his duty to monitor and ensure compliance with the law. DBR argues that appellant failed in that duty; that appellant's supervisory system (wherein he met with his agents once a year) was inadequate. Further, the hearing officer maintained that appellant knew that O'Neil's license had lapsed and did not take an active role in ensuring that the situation was rectified. Therefore, the hearing officer found that appellant failed to exercise adequate supervision in accordance with the statute. That finding is erroneous.
Although appellant was aware of the letters of the DBR, he was also under the impression that the matter was being resolved. Thus, the appellant had no reason to rely on the DBR's communications, in light of the confusion generated by the agency itself in past matters. Additionally, once O'Neil had sent all of the required paperwork to DBR in March, within the grace period established by DBR regulations, appellant reasonably understood the matter to be closed and that DBR would renew the license. Any finding that appellant somehow possessed actual "knowledge of any misdeeds" is simply not supported by the competent evidence on the record.
 CONCLUSION
For all of the foregoing reasons, this court is satisfied that the administrative decision before it is clearly erroneous. The decision of January 9, 2003 by the DBR is reversed, and appellant's appeal is granted.
Counsel shall prepare an appropriate judgment for entry.
[1] All real estate licenses in Rhode Island expire on April 30 of even numbered years and are valid for two years upon renewal.
[2] This delay effectively put O'Neil outside the statutory grace period allowed under G.L. 1956 § 5-20.5-11.
[3] It should be noted that according to G.L. 1956 §5-20.5-15(a)(5), as well as the DBR's own business regulations, 02-040-015 (2003), § 19(1), a final decision must be rendered by the hearing officer in no more than 60 days. The issue of the thirteen month delay, though not raised by appellant, is clearly in violation of this requirement.