DECISION
John Galvin, a/k/a John Galvin, Jr., ("Appellant") appeals from a decision of the Board of the Employees' Retirement System of Rhode Island ("Board" or "ERSRI"). The Board's decision affirmed the Executive Director's action granting Appellant, as the beneficiary of his wife, Paula Galvin ("Mrs. Galvin"), the excess of her total retirement contributions without interest, and not any further survivorship benefits. Jurisdiction is pursuant to Rhode Island General Laws 1956 § 42-35-15.
 I Facts and Travel
In November 2007, Appellant received a letter from the Executive Director of ERSRI, Frank Karpinski ("Mr. Karpinski"), which stated that Appellant was entitled only to the excess of her retirement fund contributions, without interest, because Mrs. Galvin did not select a retirement option as required by Rhode Island General Laws 1956 § 36-10-18. (Ex. 2, Denial Letter, November 20, 2007.) Additionally, the letter explained that all survivor annuity options ceased when she retired in December 2006 because Mrs. Galvin did not select a Joint and Survivor Option on her Application for Retirement. Id. *Page 2 
Appellant contested this decision. Thus, pursuant to ERSRI procedures, a hearing was held on February 21, 2009. (ERSRI Decision, September 18, 2009 ("Decision") at 2.) The hearing consisted of testimony from Appellant and Mr. Karpinski, as well as exhibits of notices and medical records. Id. at 2-3. Additionally, as allowed by ERSRI Rules, both parties submitted post-hearing memoranda of law and Appellant submitted post-hearing medical records. Id. at 3.
Mrs. Galvin worked as a Supervising Nurse for the Department of Mental Health, Retardation and Hospitals from 1972 through 2006. (Admin. Hr'g Tr., February 21, 2008 ("Tr.") at 6-8.) In the summer of 2006, she was diagnosed with end stage renal failure disease.Id. at 7. She was unable to work by October 2006 as a result of the disease's progression. Id. at 8
During the hearing, Appellant testified about Mrs. Galvin's positive and active demeanor prior to her diagnosis.Id. at 7. He then described that she became confused, forgetful, and irrational as the disease worsened.Id. at 10-12. In particular, she began hiding bills under her bed and refusing to take her medication. Id. at 14, 19. He testified that as of November 2006, Mrs. Galvin did not express any interest in the couple's finances and left them to Appellant because she lacked the mental capacity. Id. at 23-24. He explained that Mrs. Galvin, who was consistently in and out of the hospital, was aware that her disease was terminal and a liver transplant was essential. Id. at 11.
Appellant further testified that in December of 2006, Mrs. Galvin was unable to operate a car and her friend declined to drive her to the Retirement Board. Id. at 21-22. She nevertheless arrived there by some unknown means on December 4, 2006 and executed an Application for Retirement and an Option Selection Form. (Ex. 3, Option *Page 3 
Selection Form; Ex. 4, Application for Retirement.) On the Option Selection Form, Mrs. Galvin selected neither of the Joint and Survivor Options. (Ex. 4, Application for Retirement.) On the Application for Retirement, Mrs. Galvin listed Appellant in the selection, "Beneficiary Information for Death Beneficiary only," and signed and dated the Application. (Ex. 3, Option Selection Form) These forms, however, were not otherwise complete. (Decision at 5.)
After completing these forms, her condition continued to worsen.Id. She was readmitted to Roger Williams Hospital four days later, on December 8, and remained there until December 15, 2006.Id. The next day she arrived at the Mayo Clinic in Florida, where she remained through December 20, 2006. Id. The Hearing Officer noted the worsening of her physical problems during this period. Id. She was readmitted to Roger Williams Hospital in January 2007 and died on January 27, 2007. Id. As a result of her physical condition and his perception of her deteriorating mental state, Appellant asserted that Mrs. Galvin could not have understood the consequences of electing a death benefit option over a survivor's annuity when she executed the forms. Id.
Mr. Karpinski then testified about the justifications for his decision in the November 2007 letter. He explained that Mrs. Galvin's matter came to his attention because she had not chosen an option. (Tr. at 36.) During his testimony, he described a typical counseling interview when an applicant chooses his or her option and the information regarding such options that the counselor presents to the applicant during this meeting.Id. at 37-46. Mr. Karpinski specifically noted that the counselors are not trained in trying to assess the mental status of an applicant or the competency of the applicant to make a selection from the options. Id. at 45-46. *Page 4 
After explaining the possible option scenarios and the Service Retirement Allowance ("SRA"), Mr. Karpinski testified about the numbers noted by the options SRA and SRA Plus for Mrs. Galvin's determination. (Decision at 7.) He confirmed that Mrs. Galvin had filled out neither Option One nor Option Two. Id.
Mr. Karpinski stated that Option One is the joint survivor one hundred percent and Option Two also provides survivor benefits.Id. Mrs. Galvin's failure to choose either Option acted as an indicator to ERSRI that she was not interested in them. (Tr. at 50.)
He then explained the Application for Retirement and its activation of the termination process and establishment of a retirement date. (Decision at 8.) Although her State Termination Form was unsigned, Mrs. Galvin's termination date was listed as December 31, 2006. (Decision at 6; Ex. 4, Application for Retirement.) He also testified that it is necessary to be sure the termination date is correct on the State Termination Form. (Tr. at 54.) Mr. Karpinski explained that his November 2007 denial letter was based on "the lack of option selection form that designates a joint option that is available."Id. at 55-56.
In his decision, the Hearing Officer made findings of fact prior to analyzing the facts and law and making his final decision. (Decision at 8.) He noted that he must accord deference to ERSRI's original denial of benefits because the Hearing Officer's decision was a review of an action within the agency's responsibility.Id. at 9. The Hearing Officer cited the various levels of Mrs. Galvin's physical health, as well as her anxiety and depression, as recorded in the medical records. Id. at 11. He highlighted, however, the lack of evidence as to her mental capacity on December 4, 2006, the day *Page 5 
that she executed the paperwork at the ERSRI offices. Id. He further declined to speculate as to her mental state and thoughts on that day. Id.
The Hearing Officer also examined the statute relied on by ERSRI, § 36-10-23(a). Id. at 13. He noted that he must accord deference not only to the agency's determination of facts, but also to its interpretation of a statute whose administration has been entrusted to it. Id. Accordingly, the Hearing Officer found that he could not conclude that ERSRI exercised erroneous or reversible judgment on the matter and affirmed its determination. On November 12, 2009, the Disability Sub-Committee affirmed the decision of the Hearing Officer (Admin. Hr'g Tr., Nov. 12, 2009, at 15.) Appellant timely appealed to this Court.
On appeal, Appellant argues that the Board's affirmation of the Hearing Officer's decision was improper because Mrs. Galvin lacked the mental capacity to determine a survivorship benefit when she executed the documents at the Board's offices on December 4, 2006. He maintains that if she had the capacity to make the decision, she would not have chosen a benefit which only returns her pension contributions each month without interest, but instead would have chosen a greater payment as a survivor's benefit. He therefore argues that the record lacks the substantial evidence to support the affirmation of the Hearing Officer's denial of death benefits to Mr. Galvin because the facts demonstrate that she was too confused and incompetent to enter into a contract.
In response, ERSRI argues that § 36-10-23(a) is unambiguous and requires the return of the contribution without interest when a joint and survivor option is not selected. ERSRI further contends that Appellant has not presented sufficient evidence of Mrs. Galvin's lack of capacity when she executed her Application for Retirement and *Page 6 
Option Selection forms on December 4, 2006. In addition, ERSRI argues that under its statutory authority the Board cannot presume that members intend to choose particular options.
 II Standard of Review
The Superior Court's review of the decision of an administrative agency is governed by the Administrative Procedures Act ("APA"), § 42-35-1, et seq.Iselin v. Retirement Bd. of Employees' Retirement Sys. of R.I.,943 A.2d 1045, 1048 (R.I. 2008) (citing Rossi v. Employees'Retirement Sys. of R.I.,895 A.2d 106, 109 (R.I. 2006)). Section 42-35-15(g) of the APA states:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
In reviewing an agency decision, this Court is limited to an examination of the certified record in deciding whether the agency's decision is supported by substantial evidence. Center forBehavioral Health, R.I., Inc. v. Barros,710 A.2d 680, 684 (R.I. 1998) (citations omitted). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means more than *Page 7 
a scintilla but less than preponderance." Wayne Distrib. Co. v.Rhode Island Comm'n for Human Rights,673 A.2d 457, 459 (R.I. 1996) (citing Newport ShipyardInc. v. Rhode Island Comm'n for Human Rights,484 A.2d 893, 896 (R.I. 1994)). This Court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Interstate Navigation Co. v. Division of Pub.Utils. Carriers of R.I.,824 A.2d 1282, 1286 (R.I. 2003) (citations omitted). Thus, "if `competent evidence exists in the record, the Superior Court is required to uphold the agency's conclusions.'" Autobody Ass'nof R.I. v. Rhode Island Dep't of Bus. Regulation, et al.,996 A.2d 91, 95 (R.I. 2010) (quoting Rhode Island Pub.Telecommunications Auth. v. Rhode Island State Labor RelationsBd., 650 A.2d 479, 485 (R.I. 1994))
ERSRI uses a two-tier review process in which a hearing officer hears grievances and then issues a written decision, that is submitted to the Retirement Board. The Board considers the decision as well as any further briefs, and subsequently renders its own decision. ERSRI Reg. § 10.00(a). This two-tier system is similar to a funnel. Environmental Scientific Corp. v. Durfee,621 A.2d 200, 207-07 (R.I. 1993). At the first level of review, the hearing officer "sits as if at the mouth of the funnel" and analyzes the evidence, issues, and live testimony. Id. At the second level of review, the "discharge end" of the funnel, the Board only considers evidence that the hearing officer received first-hand.Id. Our Supreme Court has held, therefore, that the "further away from the mouth of the funnel that an administrative official is . . . the more deference should be owed to the fact finder."Id. Determinations of credibility by the hearing officer, for example, should not be disturbed unless they are "clearly wrong."Id. at 206. *Page 8 
 III Jurisdiction
A threshold issue, raised by ERSRI as an affirmative defense in its answer to Appellant's complaint, is this Court's jurisdiction to hear the instant appeal. The APA provides that an individual "who has exhausted all administrative remedies available to him [or her] within the agency, and who is aggrieved by a final order in a contested case is entitled to judicial review." Sec. 42-35-15(a). In addition, an administrative appeal to this Court must be filed "within thirty (30) days after mailing notice of the final decision of the agency." Sec. 42-35-15(b).
When exhaustion is statutorily mandated, "a plaintiff aggrieved by a state agency's action first must exhaust administrative remedies before bringing a claim in court." Richardson v. Rhode IslandDept. of Educ.,947 A.2d 253, 259 (R.I. 2008) (citations omitted). Adherence to the exhaustion doctrine "aids judicial review by allowing the parties and the agency to develop the facts of the case, and . . . promotes judicial economy by avoiding needless repetition of any administrative and judicial factfinding, perhaps avoiding the necessity of any judicial involvement.'" Downey v. Carcieri,996 A.2d 1144, 1150-51 (R.I. 2010) (quotingDoe v. East Greenwich Sch. Dept.,899 A.2d 1258, 1266 (R.I. 2006) (citations omitted)).
In this case, Appellant has, in fact, exhausted all of the administrative remedies available to him. The governing rule of appeals procedures for ERSRI, Section 10.00 of the Employees' Retirement System of Rhode Island Regulation 4, provides in pertinent part:
 "(a) After consideration of the decision of the Hearing Officer and such other matters as shall be *Page 9 
presented by counsel for any party to the proceeding, the Retirement Board shall make a decision. . . .
 "(b) Any person aggrieved by the decision of the Retirement Board shall have all rights of an aggrieved party under . . . the Administrative Procedures Act. . . ."
In the instant case, Appellant is appealing the Retirement Board's decision that was based on the decision of the Hearing Officer. He has, therefore, adhered to § 10.00 and properly exhausted his administrative remedies before appealing to this Court. The Retirement Board issued its decision on November 12, 2009, and Appellant appealed within the APA required thirty days, on November 27, 2009. Accordingly, Appellant's administrative appeal is properly before the Court.
 IV The Board's Decision A Section 36-10-23(a)
On appeal, Appellant argues that ERSRI should have chosen an option which provides for a greater payment as a survivor benefit because Mrs. Galvin did not choose an option. ERSRI responds that § 36-10-23(a) requires the return of contribution without interest when a joint and survivor option is not selected. Thus, it contends, that it may not, under the statute, presume a member's choice.
Our Supreme Court has held that the General Assembly has construed ERSRI with the authority, pursuant to § 36-8-3, [1] to operate and administer the state retirement system. See Perrotti v.Soloman, 657 A.2d 1045, 1048 (R.I. 1995). Furthermore, it is *Page 10 
established in Rhode Island that "an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency."State v. David Cluley, 808 A.2d 1098, 1103 (R.I. 2002) (quoting In re Lallo, 768 A.2d 921, 926 (R.I. 2001)). As ERSRI is responsible for the operation of § 36-10-18(a), this Court must accord great deference to its interpretation.
Under this deference, this Court must examine ERSRI's interpretation of § 36-10-23(a) and then examine whether the application of facts to this statute is clearly erroneous. Section 36-10-23(a) states the following:
 "Upon the death of a member after retirement, unless the member shall have selected any of the options provided in § 36-10-18, a benefit shall be payable consisting of the excess, if any, of the total contributions of the member at date of retirement, without interest, over the aggregate amount of all retirement allowance payments received by the member prior to his or her death."
When the language of a statue is clear and unambiguous, a court "must interpret the statute literally and must give the words of the statute their ordinary meanings." Iselin,943 A.2d at 1049 (quoting Accent Store Design, Inc. v. MarathonHouse, Inc., 674 A.2d 1223, 1226 (R.I. 1996)). The Board's interpretation of the plain language in § 36-10-23(a) as granting a survivor only the total contributions of the member at the date of retirement, without interest, if the member does not select an option is consistent with both the text and the intent of the legislature. Thus, the Board's interpretation cannot be classified as clearly erroneous or unauthorized in light of Perrotti.See 657 A.2d at 1048; see also Auto Body Ass'nof R.I., 996 A.2d at 97 (finding that a trial justice should defer to an agency's reasonable interpretation of a statute even if the trial justice would have resolved it differently). Accordingly, this Court finds that ERSRI's interpretation of its *Page 11 
statutory authority to pay only the total contributions, without interest, was in accordance with § 36-10-23(a) and thus not in excess of its statutory authority.
 B Capacity to Contract
Appellant also argues that the Board lacked substantial evidence to sustain the Hearing Officer's decision because the evidence demonstrates that Mrs. Galvin was not capable of entering into a contract. In response, ERSRI contends that Appellant failed to present sufficient evidence of her lack of capacity on December 4, 2006.
This Court may not substitute its judgment for that of the Board's on determinations of credibility and questions of fact. SeeInterstate Navigation Co., 824 A.2d at 1286. Thus, "if `competent evidence exists in the record, the Superior Court is required to uphold the agency's conclusions.'" Auto Body Ass'n of R.I., 996 A.2d at 95 (quoting Rhode Island Pub. TelecommunicationsAuth., 650 A.2d at 484). Therefore, in the instant case, the Court must defer to the Board's judgment that the record reflects that — despite their discussions of Mrs. Galvin's depression, anxiety, and confusion — neither the medical records nor Appellant's testimony displayed that she did not understand the nature or consequences of her acts on December 4, 2006. See id.;Durfee, 621 A.2d at 208 (discussing significant deference owed to the fact-finder in a two-tier administrative process); (Decision at 10-11.). The record does not contain evidence contradicting this finding to make the decision clearly erroneous.
Appellant further asserts that the Board should have presumed that Mrs. Galvin would have chosen an option that provides for greater survivor benefits if she had the capacity to contract. Conversely, ERSRI argues that § 36-10-23(a) does not allow it to *Page 12 
presume lack of capacity or a choice that the member would have made. An agency may only act within the statute that defines its powers. Iselin, 943 A.2d at 1050 (quoting In re AdvisoryOpinion to the Governor, 627 A.2d 1246, 1248 (R.I. 1993)). The Board, therefore, may not act beyond its statutory authority in § 36-10-23(a). Thus, requiring the agency to find that Mrs. Galvin would have chosen another option would be in excess of that authority, which plainly mandates ERSRI's action if a member does not choose an option. Accordingly, ERSRI's refusal to expand the limits of the statute is not clearly erroneous.
 V Conclusion
After a review of the entire record, the Court finds that the Retirement Board's affirming ERSRI's denial of Appellant's survivor benefits was neither in violation of its statutory authority, nor clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. Substantial rights of Appellant have not been prejudiced. This Court, therefore, affirms the Board's decision and denies the appeal. Counsel shall submit appropriate judgment for entry.
[1] Section 36-8-3 provides in part: "The general administration and the responsibility for the proper operation of the retirement system and for making effective the provisions of chapters 8-10 of this title are here by vested in a retirement board."