STATE

v.

David CLULEY.

No. 2001–569–M.P.

Supreme Court of Rhode Island.

Nov. 12, 2002.

John J. Sullivan, III, Aaron L. Weisman, Providence, for Plaintiff.

Richard S. Humphrey, Tiverton, Amy Stratton, Coventry, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

The law may be a blunt instrument, but it is not an exact science. This driving-under-the-influence (DUI) case illustrates that point, and, at the same time, provides an object lesson on why the law does not concern itself with trifles (*"de minimis non curat lex"*).

Petitioning for certiorari, the state asks us to reverse a District Court decision suppressing certain breath-test results attributable to respondent, motor-vehicle operator David Cluley (Cluley). After a pretrial hearing in connection with the state's DUI case against Cluley, the District Court suppressed the test results. It did so because it found that the Department of Health (DOH) failed to comply with an applicable DOH regulation when it attempted to validate the accuracy of certain breath-testing equipment that the police later used to gauge the alcohol content of Cluley's blood. The state contends that the trial judge erred in suppressing the breath-test results because it duly established that DOH had checked the breath-test equipment for accuracy "no more than thirty (30) days prior to the test," G.L.1956 § 31–27–2(c)(5), and that its validation efforts complied with the applicable DOH regulation because the tested equipment "indicate[d] the same alcohol percent as the standard alcohol solution used in the test." Department of Health, Food and Drug Control Division Rules and Regulations Pertaining to Preliminary Breath Testing and Standards for the Determination of the Amount of Alcohol and/or Drugs in a Person's Blood by Chemical Analysis of the Breath, Blood and/or Urine or Other Bodily Substances, § 7.0 D.1 (2001) (DOH Rules and Regulations). Because the accuracy of Cluley's breath-test results was not called into question by the results of DOH's challenged validation process and because the District Court failed to defer to DOH's reasonable interpretation of its own regulation pertaining to the validation of the testing equipment, we reverse, quash the order suppressing the results of Cluley's breath test, and remand the case for further proceedings consistent with this opinion.

## Travel and Facts

On May 19, 2001, the state police stopped Cluley's vehicle for speeding. Suspecting him of driving his vehicle while under the influence of some intoxicating substance, the police administered two field sobriety tests to Cluley, and then obtained his consent to conduct breath tests. These latter tests resulted in blood-alcohol-content readings of 0.136 in the first testing phase and 0.113 in the second phase [1]—well over the 0.08 legal limit established by § 31–27–2(a) and (b)(1).[2] As a result, the police charged Cluley with DUI in violation of this statute.

Eventually, Cluley moved to suppress the test results, arguing that DOH had not complied with either § 31–27–2(c)(4) and (5) [3] or with an applicable DOH regulation implementing this statute.[4] The District

1. "The concentration of ethyl alcohol in the blood is expressed in a number of ways * * *. For forensic purposes in this country, the value is usually stated as the weight of alcohol in a given volume, of blood (weight/volume), and is usually stated in terms of the grams of alcohol per 100 milliliters (or 100 cubic centimeters) of blood. (Note that with blood, 1 ml. = 1 cc.)

 "Most breath test results are reported as: * * * 0.10% * * * [that] indicate[s] a content of 0.10 grams of alcohol in 100 ml. of blood, which is called the 'blood alcohol concentration,' or BAC * * *. With breath tests, the BAC as reported is derived from a measurement of the alcohol which was actually present in the breath sample. The conversion is automatically performed by the breath test machine (based on the built-in assumption that a breath:blood alcohol ratio of 2100:1 exists). Under present procedures the actual amount of alcohol in the breath sample (a very tiny amount) is not reported. If we assign the number 1.0 to the amount of alcohol in blood, the equivalent amount of alcohol in the breath would be 0.00047 (approximately). One would need 2100 parts breath, for one part blood. Thus, the amount of alcohol actually present in the *breath* when a 0.10% BAC is present in the *blood* would be 0.00047 (one tenth of 0.00047)." Edward F. Fitzgerald, *Intoxication Test Evidence*, § 39:1 at 39–2 (2nd ed.1999).

2. General Laws 1956 § 31–27–2(a) and (b)(1) provide as follows:
 "(a) Whoever drives or otherwise operates any vehicle in the state while under the influence of any intoxicating liquor, drugs, toluene, or any controlled substance as defined in chapter 28 of title 21, or any combination of these, shall be guilty of a violation or a misdemeanor as set forth in subdivision (b)(3) of this section and shall

be punished as provided in section (d) of this section.
 "(b)(1) Any person charged under subsection (a) of this section whose blood alcohol concentration is eight one-hundredths of one percent (.08%) or more by weight as shown by a chemical analysis of a blood, breath, or urine sample is guilty of violating subsection (a) of this section."

3. Section 31–27–2(c)(4)–(5) provides in pertinent part as follows:

 "(c) In any civil or criminal prosecution for a[DUI] violation * * * evidence as to the amount of intoxicating liquor, toluene, or any controlled substance * * * as shown by a chemical analysis of the defendant's breath, blood, urine, or other bodily substance is admissible and competent, provided that evidence is presented that the following conditions have been complied with:
 " * * *

 "(4) The test was performed by an authorized individual, and according to methods and with equipment approved by the director of the department of health of the state of Rhode Island.

 "(5) Equipment used for breath analysis had been tested for accuracy no more than thirty (30) days prior to the test by qualified personnel. Breathalyzer operators shall be qualified and certified by the department of health within three hundred sixty-five (365) days of the test."

4. Department of Health, Food and Drug Control Division Rules and Regulations Pertaining to Preliminary Breath Testing and Standards for the Determination of the Amount of Alcohol and/or Drugs in a Person's Blood by Chemical Analysis of the Breath, Blood, and/or Urine or Other Bodily Substances, § 7.0 D.1 (2001) (DOH Rules and Regulations) provides in pertinent part:

Court judge granted Cluley's motion to suppress, ruling that the tests DOH had used on May 1, 2001, to determine the accuracy of the breath-testing equipment did not result in readings "indicat[ing] the same alcohol percent as the standard alcohol solution used in the test," as required by § 7.0 D.1 of the DOH Rules and Regulations. The judge also noted that the machine used to test Cluley's breath had been out of service eight times since 1992. Lastly, he pointed to the fact that DOH failed to certify the accuracy of the machine after a DOH tester, on or about May 8, 2001, had moved a lever on the equipment from the "off" to the "on" position.

## Analysis

■ In any DUI prosecution, before breath-test results can be admitted as evidence of a driver's alleged intoxication, qualified DOH agents must have tested the equipment in question for accuracy no more than thirty days before the police administer the breath test to any given suspect. *See* § 31–27–2(c)(5). According to a DOH regulation, when DOH checks the accuracy of the testing equipment, the "[i]nstruments must indicate *the same* alcohol percent as the standard alcohol solution used in the test." DOH Rules and Regulations § 7.0 D.1. (Emphasis added.)

In this case, after testing the equipment on May 1, 2001, an experienced DOH tester approved and certified the machine that the police later used to test Cluley's breath on May 19, 2001. Six separate tests showed that the machine was working on May 1 according to the manufacturer's specifications; that is, the "instruments" on the machine indicated "the same" alcohol percent as the standard alcohol solution used in the test because either they were within 0.005 grams (plus or minus) of the actual alcohol content in the test solution, or, when the alcohol content in the test solution was beyond 0.10 grams, then the test results were within a 5 percent plus or minus range of the actual amount of alcohol present in the test solution. Specifically, the machine consistently registered, when tested, a slightly lesser quantity of alcohol than the actual amount of alcohol in the test solution (for example, one test result showed a 0.097 reading on the machine when the actual amount of alcohol in the test solution was 0.10),[5] but the results were still within the acceptable range specified by the machine's manufacturer. Because each test result fell within the range of variance specified by the manufacturer as acceptable, DOH's tester certified the equipment as accurate.

■ Nevertheless, interpreting the word "same" as used in the DOH regulation to mean "identical," the District Court granted Cluley's motion to suppress the results of his May 19 breath tests. Although a DOH representative testified that the word "same" in DOH's own regulations meant "within an acceptable range," "within an acceptable variance,"

---

"An authorized agent of the Department will check on the accuracy of approved breath-testing instruments as prescribed by law. Instruments must indicate the *same* alcohol percent as the standard alcohol solution used in the test." (Emphasis added.)

5. A DOH agent tested the breath machine six different times using three different testing solutions containing 0.08, 0.10, and 0.20 amounts of alcohol, respectively. The tests results for the 0.08 alcohol solution were 0.075 and 0.076, indicating a difference of 0.005 and 0.004, respectively. The results for the 0.10 solution were both 0.097, indicating a difference of 0.003. The results for the 0.20 solution were 0.197 and 0.196, indicating differences of 0.003 and 0.004, respectively. The DOH agent testified that the acceptable range is 0.005 plus or minus and, if the testing solution contained alcohol beyond 0.10, then it is 5 percent plus or minus.

"acceptable range [of] .005 plus or minus," "beyond a .10 then it's a 5%" and "[within] a 5% limitation," the District Court rejected DOH's interpretation of the word "same" as used in its regulation. In doing so, we hold, the trial judge ignored the cases from this Court that have held that "while not controlling, the interpretation given a statute by the administering agency is entitled to great weight." *Berkshire Cablevision of Rhode Island, Inc. v. Burke*, 488 A.2d 676, 679 (R.I.1985). "The law in Rhode Island is well settled that an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency." *In re Lallo*, 768 A.2d 921, 926 (R.I.2001).

Here, DOH defined the word "same" in its regulation to mean test results that came within 0.005 grams, plus or minus, of the amount of alcohol present in the tested solution. When the testing solution, however, contained an amount of alcohol beyond 0.10 grams, then readings showing an amount that was not more than 5 percent over or under the actual alcohol content in the testing solution also would be considered the "same" as the amount in the testing solution. The department adopted this interpretation of its regulation because it was consistent with the operating specifications set by the manufacturer of this equipment and because, as a practical matter, such small deviations between the measurements shown on the machine and the actual alcohol content in the testing samples would not indicate that the equipment was inaccurate. Giving this administrative interpretation the deference it is due, we conclude that it was not plainly wrong or at odds with the statutory requirement that the equipment be "tested for accuracy" during the thirty-day period preceding its use.

■ All the statute required in this case was that "[e]quipment used for breath analysis [must have been] tested for accuracy no more than thirty (30) days prior to the test by qualified personnel." Section 31–27–2(c)(5). But it did not clearly specify or restrict what type of testing could be used to determine accuracy, nor did it define the concept of accuracy. "Where the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized." *Whitehouse v. Davis*, 774 A.2d 816, 818–19 (R.I.2001) (quoting *Gallison v. Bristol School Committee*, 493 A.2d 164, 166 (R.I.1985)); *see also Pawtucket Power Associates Limited Partnership v. City of Pawtucket*, 622 A.2d 452, 457 (R.I.1993) (deferring to an administrative agency's interpretation of a statute even when other interpretations were possible). Under DOH's interpretation, a relatively miniscule variation between the amount of alcohol in the testing solution and the reading shown on the machine would not indicate that the machine was inaccurate; thus, DOH would treat such slight deviations as "the same" for the practical purpose of determining whether, in any given later use of the machine during the following thirty-day period, the test results could be accepted as accurate. Indeed, a contrary interpretation of the governing statute and regulation would lead to the unwarranted and unreasonable suppression of breath-test results—including ones like those in the case at bar showing readings well in excess of the 0.08 legal limit—merely because of some infinitesimal variance in the accuracy-testing data that could not possibly have affected the reliability of the later readings. Thus, the District Court, we hold, erred in substituting its own definition of the DOH

regulation's use of the word "same" for the one used by the governmental entity charged with administering this law.

■ As we have held previously, the suppression of evidence is justified only where the deviation from "compliance with regulations established by the director of the Department of Health of the State of Rhode Island * * * [has] actually affected the validity of the test results." *State ex rel. Town of Middletown v. Snyder*, 692 A.2d 705, 706 (R.I.1997). Thus, "[t]o warrant the suppression of a chemical test, the validity of the results must be brought into question, even when technical compliance with the regulations is found to be wanting." *State ex rel. Town of South Kingstown v. Reilly*, 745 A.2d 745, 747 (R.I. 2000).

Here, the results of the May 19 testing of Cluley's breath were not brought into question merely because, on May 1, the breath machine had registered slightly lower amounts of alcohol than were actually present in the three testing solutions. Indeed, such a slight under-reporting in the machine that the police later used to test Cluley's breath would have inured to his benefit. In other words, because of the relatively small deviations between the readings on the machine and the actual alcohol content of the solutions tested on May 1, it is reasonable to infer that Cluley's blood actually contained slightly more alcohol when the police tested it on May 19 than the test results revealed. Hence, suppression was unwarranted because such a slight downward deviation in the DOH test results did not bring the accuracy of the machine into question, much less did it suggest that Cluley's blood alcohol content on May 19 may have been less than the legal limit when it was tested.

■ Similarly, DOH's alleged erroneous reference to the machine by a different serial number several years before the date of the testing in question hardly provided a valid basis for suppression because it had no bearing on the accuracy of the May 19 test results for Cluley's breath. Even the District Court judge said that he "will put that aside and it is not considered in this case. I will not factor it in." Likewise, the DOH tester's negligence in failing to return one of the machine's levers to the "on" position after validating it on May 1 did not affect the May 19 test of Cluley's breath because she switched the machine back into its proper operating position on May 8. Because this occurred well before the police tested Cluley's breath on May 19, because the breath-testing machine could not function if this lever remained in the "off" position, and because this occurrence did not have any demonstrable effect on the accuracy of the May 19 test results, the switching of the machine's lever from an "off" to an "on" position on May 8 should not have triggered suppression of this evidence. Thus, for these reasons, and pursuant to this Court's reasoning in *Snyder* and *Reilly*, the District Court erred in suppressing the results of Cluley's May 19 breath tests.

■ Additionally, Cluley argues that the state failed to show that the relevant scientific community generally considered DOH's interpretation of the word "same" in its regulation to be reliable. But the state did not have to present expert scientific testimony on this point. On the contrary, proper judicial deference to DOH's interpretation of its regulations required the District Court to presume the validity and reasonableness of that construction until and unless the party challenging its interpretation proved otherwise. In short, "the [District] Court should have applied a more deferential standard in defining a term that had already been defined by the supervising administrative agency * * *."

*Pawtucket Power Associates Limited Partnership,* 622 A.2d at 457.

■ And the mere fact that the regulation itself did not define the word "same" did not prevent DOH representatives from testifying about how they interpreted and applied this regulation in the field. Here, the testimony of DOH's experienced tester was not only sufficient to do so, but also she validated the practical accuracy. and functional status of the testing equipment. Testifying as the supervisor of DOH's breath-testing program, she explained how she had performed accuracy tests on machines such as the one used in this case approximately twenty times a month for the last twelve years. Moreover, she had trained and retrained police officers in the proper use of such instrumentation for breath tests and in the administration of field-sobriety tests. The breadth of her experience and her working familiarity with this type of testing equipment was more than adequate to qualify her as an expert and as a witness capable of relating how DOH defined and applied the word "same" in its implementation of the regulation. Thus, her testimony regarding DOH's interpretation of the word "same" was appropriate and creditable despite DOH's failure to scientifically validate the regulation or to define the word "same" in the regulations themselves.

■ Finally, DOH's interpretation of its own regulation was objectively reasonable. The General Assembly empowered DOH to implement the breath-testing statute via the enactment of technical regulations that interpret and apply the mandates of § 31–27–2, including subsections (c)(4)[6] and (g)[7]

. The purpose of the DOH regulations was to certify "breath testing instruments and procedures for testing evidential breath testing instruments, for reliable quantitative determinations and effective administrative practices to protect the safety and welfare of the public." DOH Rules and Regulations, Introduction. The DOH's interpretation of the word "same," we conclude, was reasonable because it adhered to the specifications established by the manufacturer for use of the breath-testing equipment and to the statutory purpose for requiring such testing in the first place. *Accord People v. Williams,* 28 Cal.4th 408, 121 Cal.Rptr.2d 854, 49 P.3d 203, 208 (2002) ("[a]lthough the [breath-test machine] was not tested with the frequency demanded by the regulations, the machine always performed within the acceptable range, and the slight inaccuracies usually underreported the amount of alcohol present. * * * [Thus, the] trial court properly exercised its discretion in admitting the test results.").

Our analysis of the enabling statute and of DOH's implementing regulation does no violence to the time-honored dictum that courts should construe a penal statute strictly. *See, e.g., State v. Capuano,* 591 A.2d 35, 37 (R.I.1991) (stating "[a] penal statute * * * 'must be strictly construed in favor of the party upon whom [the] penalty is to be imposed' "). Strict construction, however, does not mean that courts should adopt irrational interpretations that would thwart or impede the underlying purpose of the statute. *State v. Lusi,* 625 A.2d 1350, 1353 (R.I.1993) ("with respect to penal statutes this court

---

**6.** *See* note 3, *supra.*

**7.** Section 31–27–2(g) provides that:
"The director of the department of health of the state of Rhode Island is empowered to make and file with the secretary of state regulations which prescribe the techniques and methods of chemical analysis of the person's body fluids or breath, and the qualifications for certification of individuals authorized to administer this testing and analysis."

will not interpret a statute literally when to do so would lead to an absurd or unreasonable result or would impede a clear legislative intent"); *see also State v. Gonsalves,* 476 A.2d 108, 111 (R.I.1984) ("[P]enal statutes are to be strictly construed, [but] they should not be interpreted in a manner that would thwart a clear legislative intent. * * * [Thus], we will not attribute to the Legislature a meaningless or absurd result.").

 Lastly, Cluley argues that the State improperly relied on an exhibit that was not introduced into evidence before the District Court. He refers to a letter from a representative of the testing equipment's manufacturer concerning the acceptable testing parameters for the equipment in question. In its brief, the state explained that it only had marked this exhibit for identification purposes at the suppression hearing. Because the letter merely corroborated the testimony of DOH's tester, the state's reference to this document has no bearing on the outcome of our review. In any event, the rules of evidence do not apply at suppression hearings. *See* Rules 101(B)(1) and 104(a)(b) of the Rhode Island Rules of Evidence; *State v. Pena–Lora,* 710 A.2d 1262, 1264 (R.I. 1998) (holding that the rules of evidence do not apply when a court is deciding upon preliminary questions dealing with the admissibility of evidence under Rule 104, except for questions of privilege).

## Conclusion

For these reasons, we grant the petition for certiorari, quash the District Court's suppression order, and remand the file in this case to the District Court for further proceedings consistent with our decision, which we have endorsed hereon.