[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is a request by Defendants Jeffery Derderian and Michael Derderian for pretrial subpoenas pursuant to R.I. Super. R. Crim. P. 17(c). The Derderian Defendants ("Defendants") seek to compel the Rhode Island Department of the Attorney General, the Rhode Island State Fire Marshal, and each of the thirty-nine (39) cities and towns in Rhode Island to produce copies of any criminal violations of R.I. Gen. Laws 1956 § 23-28.6-15, where notice was not first given to the defendant. The scope of the request encompasses almost thirty years of records, dating from 1976 to the present. The state objects to the motion on the grounds that it is irrelevant, over burdensome, and unnecessary for preparation for trial. The Defendants and the State have submitted memoranda supporting their positions and argued before this Court on October 14, 2005.
 RULE 17(C) SUBPOENAS
Rule 17(c) was not designed as a means of discovery, but rather a tool to review specific, identifiable evidence before trial so as to expedite the trial process. State v. DiPrete, 698 A.2d 223, 226 (R.I. 1997). Rule 17(c) provides
 "Subpoena. — * * *
 (c) For Production of Documentary Evidence and of Objects. A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys."
Discretion to allow a pretrial subpoena belongs to the trial court, as the inquiry is often fact-intensive. Diprete, 698 A.2d at 226. However, the Rhode Island Supreme Court has adopted a specific standard that the moving party must meet before such a request is granted. In order to require the production, the moving party must show
 "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that failure to obtain such inspection may tend unreasonably to delay trial; and (4) that the application is made in good faith and is not intended as a general `fishing expedition.'" Diprete, 698 A.2d at 225 (citing United States v. Nixon, 418 U.S. 698, 699-702 (1974)).
The initial hurdle of relevancy is shown when there is a "sufficient likelihood" that the documents requested will be relevant to the offense charged. Nixon,418 U.S. at 700. "Mere speculation as to the content of documents is hardly a showing of relevance." UnitedStates v. Concemi, 957 F.2d 942, 949 (1st Cir. 1992).[1]
 DEFENDANTS' ARGUMENT
The relevancy of the request relates to the misdemeanor manslaughter charges. Defendants speculate that no documents will be uncovered as a result of the subpoenas because few, if any, prosecutions have commenced under the Fire Safety Code without prior notice and opportunity to cure. The Defendants contend that an offense under § 23-28.6-15 ("foam statute") only amounts to a misdemeanor after a defendant receives notice of a potential violation and fails to remedy the condition. If this contention was true, then the State would not only have to prove that the Defendants' building was in violation of the foam statute, but also that the Defendants were adequately notified of their noncompliance. If the State failed to prove the Defendants were sufficiently notified, no misdemeanor would serve as the predicate offense for the misdemeanor manslaughter counts.
Defendants' theory that notice should be implied in the statute is explained in Defendants' Joint Motion to Dismiss. (10-22.) Defendants claim the language of the foam statute creates no punishable offense. The Defendants assert: "the language of the statute was phrased entirely in the passive voice and speaks to the nature of the material encompassed within the statute and not to the conduct of any individual. . . . There is nothing in the statute that identifies or describes any criminal act, nor is there any penalty provision set forth in the statute itself." (Motion to Dismiss at 15). The Defendants further reason that the statute must only be a guideline for local inspectors to follow, not a requirement that building owners or lessees can be prosecuted.[2] Allegedly, the subpoenas would support the Defendants' contention that the penalty statute cannot result in prosecution of the foam statute without prior notice.
 STATE'S RESPONSE
The State urges the Court not to reach to far lengths for shreds of evidence that might tend to show some local officials may have read a notice requirement into the statute. The State argues implying notice into the statute is not only unnecessary, but unallowable as the statute clearly and plainly does not require notice and is unambiguous. The State further contends that requiring notice would create results contrary to the Fire Safety Code's implicit purpose of increasing safety and preventing fire losses. Finally, the State asserts local enforcement officers' customs which may encourage voluntary compliance would not prevent prosecution under the statute without notice.
 ANALYSIS
The foam statute itself does not specifically refer to building owners. However, the penalty statute both refers to building owner responsibility and to the foam statute. It is clear that the legislature intended for building owners, not just building inspectors, to use the Fire Safety Code to insure compliance with the standards.[3] Relevant parts of the foam statute state
 "Decorative and acoustical material to be flame resistant —
 (a) All combustible decorative and acoustical material including curtains, but not including floor coverings shall be rendered and maintained flame resistant in accordance with subsection (d). This regulation shall not be construed to prohibit the use of wall or ceiling covering affixed directly to the wall or ceiling, which meet the requirements of subsection (e). Furnishing or decorations of an explosive or highly flammable character shall not be used.
 . . .
 (d)
 . . .
 (2) When a doubt exists as to the fire retardant quality or the permanency of the treatment, material shall be subject to the field check test as provided in subsection (d)(3).
 . . .
 (e) Interior finish in all places of assembly shall be as regulated or modified by the provisions of the description of interior finish in § 23-28.1-5 and shall not exceed the following classifications for the locations indicated:
 (1) In all means of egress Class A.
 (2) In all other rooms or spaces Class C." 23-28.6-15 (1997) (repealed 2004).
Section 23-28.3-9 is the general penalty section of the Fire Safety code. This section reads
 "Violations of chapter or codes — Any building owner or lessee who violates or fails or refuses to comply with the provisions of this chapter, the Fire Safety Code, chapters 28.1 — 28.39 of this title, or any code adopted by the board, or any lawful order of authority having jurisdiction shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than five hundred dollars ($500) or shall be imprisoned for not exceeding six (6) months, or both so fined and imprisoned for each offense, and each day the violation, omission, failure, or refusal continues shall be deemed a separate offense; provided that any person who shall knowingly make, give, or produce any false statements or false evidence, under oath to the authority having jurisdiction or to the fire safety board, shall be guilty of perjury. It shall be the authority having jurisdiction to enforce the provisions of this chapter." Section 23-28.3-9.
When read together, the plain, unambiguous language of the penalty statute indicates that violation of the foam statute is a misdemeanor. If the legislature had not intended chapter 28.61-5 (the foam statute) to be included with this penalty provision, they would not have provided the span of "28.1-28.39" in the text of the statute. "[I]n enacting a statute the Legislature is presumed to have intended that every word, sentence, or provision has some useful purpose and will have some force and effect." State v. Benoit, 650 A.2d 1230, 1232
(R.I. 1994) (citing State v. Reis, 430 A.2d 749, 752
(R.I. 1981)). Therefore, the general penalty provision must apply to the foam statute. There is nothing regarding notice or opportunity to cure in the general penalty statute. If the General Assembly had intended for notice to be a prerequisite for prosecution, the only punishable offense listed would have been failure or refusal to comply with any lawful order of authority having jurisdiction. Instead the statute lists violation of provisions of the chapter and failure or refusal to comply with provisions of the chapter as two separate distinctive ways the penalty clause can be invoked. Section 23-28.3-9 ("Any building owner or lessee who violates or fails or refuses to comply with the provisions of this chapter . . . shall be guilty of a misdemeanor.") (emphasis added)
The Rhode Island Supreme Court has held on numerous occasions that when a statute has a plain, clear, and unambiguous meaning, no judicial interpretation is required, and the words will be given full effect in accordance with the plain expressed intent. E.g. StateDepartment of Corrections v. Rhode Island State LaborRelations Board, 703 A.2d 1095, 1097 (R.I. 1997);International Federation of Technical ProfessionalEngineers v. Rhode Island State Labor Relations Bd.,747 A.2d 1002, 1004 (R.I. 2000). The Supreme Court has further stated "[a] practice of a board or agency cannot overcome or negate a statutory interpretative."Technical Professional Engineers, 703 A.2d at 1097.
The Defendants cite State v. Cluley to support their request subpoenas. 808 A.2d 1098 (R.I. 2002). In this case, the Department of Health (DOH) sought to define the word "same" as the "same" plus or minus .005 grams.Id. at 1102-1103. An agency representative testified how the agency had applied and interpreted the statute in the past. Id. at 1104-1105. The court deferred to the stated interpretation given by the agency representative, as it was not plainly at odds with the underlying statute and coincided with the statute's purpose. Id. at 1104-1106. This case is distinguishable as the agency was interpreting their own regulation and because the court deferred to agency testimony as to interpretation as opposed to speculating as to the agency's interpretation through various enforcement records.
The Defendants also cite Martone v. Johnston SchoolCommittee, in which the court deferred to the definition of "suspension" held by the Commissioner of Education because two conflicting statutory sections were in effect. 824 A.2d 426 (R.I. 2003). This case is easily distinguishable because the foam statute and the penalty statute do not conflict, but rather read together harmoniously.[4] The court in neither Cluley norMartone relied on enforcement documents indicating specific past practices. Instead the Court deferred to how the agency representatives believed the statute should be applied to the facts or similar facts.
Besides the speculation that no documented prosecution of the Fire Safety Code exists without notice, the Defendants point to a 1977 opinion of Attorney General Michaelson and three similar formal interpretations which deal with the procedures for enforcement.[5]
These documents specifically address how inspection procedures should be handled by local enforcing officers. The Defendants cite to the portion of the Attorney General opinion that states
 "It would appear that an enforcing officer investigates and assumes responsibility for enforcing the fire safety code by making investigation and seeking voluntary compliance. If such compliance is not effected by the local enforcing officer, the state fire marshal is to be notified and must take appropriate action to prosecute the offender." Opinion of Attorney General, 1977 R.I.A.G. Lexis. 36.
These statements simply highlight that local officials cannot prosecute an offender, as it is the sole responsibility of the State Fire Marshal to prosecute pursuant to the statute. The result of the limited enforcement authority is that local officials are charged with the responsibility of seeking voluntary compliance; the State Fire Marshal is notified when the local officials fail to obtain compliance. This procedure does not imply the State Fire Marshal and his authorized representatives are powerless to prosecute a violation absent efforts of a local official to obtain compliance. If anything, this procedure explains why prosecutions are often preceded by notice and failure to comply. It is clearly the legislative intent in enacting a panoply of safety-oriented statutes across a spectrum of Rhode Island regulated businesses and industries that compliance with the standards in the statutes be obtained. Except when violations are not discovered until after a fire incident, the procedure for obtaining compliance would probably work most effectively when prosecution and criminal sanctions are only employed after reasonable compliance efforts have been made at the local level and have proved unsuccessful.
No Rhode Island statute or agency regulation has been presented to the Court which would require that notice must be given to potential offenders prior to prosecution.[6] There has also been no case cited by either party that would require dismissal of any criminal prosecution under these statutes for failing to give express or implied notice before criminally charging the offender pursuant to the statutes. To hold such a position under the Rhode Island statute would produce absurd results, as in the instant case where the cited violations were determined after a fire incident and without prior inspection by state or local officials preceding the fire. To prohibit prosecution for violations of the fire codes under these circumstances would be inappropriate under the statutes and defeat the very purpose for their enactment in the first instance.[7]
The Defendants' assertion that local official's enforcement customs which encourage voluntary compliance is irrelevant to the question of the Fire Marshal's responsibility for prosecution under the statute. Information discovered through the 17(c) motion would have no affect on the State Fire Marshal's ability to prosecute the foam statute and other sections of the Fire Safety Code. As the foam and the penalty statute are clear on its face, and because the result of the subpoenas would only show the habits of local enforcement officials, the Court rules the documents are irrelevant for purposes of evidence presented at trial.[8]
Finally, the Court notes the burdensome nature of the request. Such a request would create great expense and time sacrificed on limited state and local resources. In any event, document destruction policies, as well as limited and non-uniform information reporting, would not paint a clear picture of all past prosecutions.
 CONCLUSION
For the foregoing reasons, the Court denies the Defendants' motion to issue subpoenas prior to trial.
[1] Because the Rhode Island Rule is virtually identical to its federal counterpart, state courts look to the federal court interpretations for guidance. Statev. DiPrete, 698 A.2d at 225 (R.I. 1997).
[2] If this were true, § 23-28.3-9 ("penalty statute") could not apply to the foam statute, but rather §§ 23-28.5-1
to 28.5-3 ("inspection statutes") would apply. However, these statutes deal solely with accumulated material. The inspections statutes are irrelevant, as the statute the Defendants were charged with was not for quantity of accumulated combustible materials but rather the use of material not adequately fire resistance in a place of assembly. The State has not used the quantity of the materials found as the basis of their charges.
[3] Another section of the Fire Safety Code also implies the owner has an affirmative duty to comply with the Fire Safety Code. If a building owner has a question as to what any of the provisions mean, Section 23-28.-3.5(a) states "[a]ny building owner may consult with the authority having jurisdiction for advice and assistance in complying with the provisions of this Fire Safety Code, chapters 28.1 — 28.39 of this title." (1997) (amended 2000). It seems clear the General Assembly did not intend for building owners to wait for an inspector to notify them if they were in noncompliance, but rather created a minimum standard that building owners had the responsibility to reach.
[4] Moreover, the inspection statute and the penalty statute also do not conflict, as the inspection statute only applies to how local officials should enforce the laws relating to the accumulation of materials, and the penalty provision enforces the Fire Safety Code in general.
[5] The Fire Safety Code Interpretations explain that only persons who have been appointed and certified as Deputy or Assistant Deputy State Fire Marshals and who have maintained certification may enforce the Fire Safety Code. Fire Safety Code Board of Appeal ReviewFormal Interpretation, No. 99-03, 99-04, 00-01.
[6] The Defendant's reliance on a Massachusetts statute and the case of Massachusettes v. Porrazzo, is misplaced. Mass. Gen. Laws. Ch. 143, § 51; 516 N.E.2d 1182
(Mass.App.Ct. 1987). The Massachusetts statute clearly and explicitly requires actual notice and a 30-day period of time for compliance before a criminal prosecution of a violation may begin against a party. The case cited simply upholds the clear language of the statute.
[7] The stated purpose of the Fire Safety Code was "[t]o specify reasonable minimum requirements for fire safety in new and existing buildings facilities . . . in the various cities and towns in this state[.]" Section23-28.1-2(2)(1997). The purpose of the Fire Safety Code Board is to "promulgate, amend, and repeal rules and regulations to safeguard life and property from the hazards of fire and explosives consistent with the provisions of the Fire Safety Code . . . in accordance with standard safe practice as embodied in widely recognized standards of good practice for fire prevention and fire protection." Section 23-28.3-3.
[8] The Court will postpone deciding the purely constitutional concerns raised by the Defendants until the Motion to Dismiss, as such considerations could not be affected by the results of production requests.