DECISION
Reilly Electric Contractors, Inc., ("Relco"), Relco's Vice President of Operations Michael McSheffrey ("McSheffrey"), and Relco employees Robert Rutledge, John Brewer, and Ray Bombadier (collectively "Plaintiffs") bring this appeal from a decision of the Department of Labor and Training ("DLT"). The DLT fined the Plaintiffs for installing conduit for the purpose of using electricity for light without a permit or the required licenses. For the reasons set forth in this Decision, the Court affirms the decision of the DLT. This Court derives its jurisdiction over this appeal from Section 45-35-15 of the Rhode Island General Laws, the so-called Administrative Procedures Act.
 I Facts and Travel
On October 19, 2005, DLT Chief Plumbing Investigator E. Patrick Luther ("Luther"), visited Rhode Island College for a routine inspection. (March 15, 2006, DLT Hearing, Tr. at 3, 14.) Luther witnessed four employees from Relco excavating the ground and performing *Page 2 
preliminary work for a lighting project at the soccer field.Id. at 4. They were drilling holes with an auger and digging with a shovel. Id. at 33-34. Luther observed electric conduit at the site. Id. at 5. After completing the investigation, he cited McSheffrey for performing electrical work without obtaining a permit from the State of Rhode Island, in violation of G.L. 1956 § 5-6-25. Luther did not cite any of the individual employees at that time because although he observed the conduit, he noted that it was not being installed. (March 15, 2006, DLT Hearing, Tr. at 5.)
On October 26, 2005, Relco applied for a permit with the City of Providence to perform the electrical work at the field. When the representative from Relco was applying for the permit, the receptionist for the City advised him that the company could not perform the proposed work without a permit from the State of Rhode Island. (March 15, 2006, DLT Hearing, Tr. at 24.) Later that day, a Relco employee purportedly inquired about obtaining a state license but did not obtain one because he did not have the appropriate paperwork. Id. Relco never did, in fact, obtain a permit from the State of Rhode Island. Id.
The following day, October 27, 2005, Robert Raimbault ("Raimbault"), Chief Electrical Inspector for the State of Rhode Island, visited the Relco worksite at the soccer field.Id. at 6, 38. Raimbault observed "four men holding electrical conduit over their heads feeding it into the ground as [the conduit was] being pulled in by another gentleman on a machine on the other side of the field." Id. at 40. He later testified, "I walked up to these guys and they were either holding conduit over their heads, and the conduit is being pulled into the ground. And it was like right in your face. There was no question that these guys were putting electrical conduit in the ground." Id. at 53. Raimbault learned from his interaction with the men that three of them were operating without a Rhode Island license and further that they still did not have a permit for the job. Id. *Page 3 
The DLT held a hearing on March 15, 2006, to address the violations of October 19, 2005, and October 27, 2005. For the October 19, 2005 incident, the Board of Examiners of Electricians Committee (Board) issued a recommendation to the Director of the DLT to fine McSheffrey $950 for performing electric work without a permit. (DLT Decision on Appeal, Apr. 20, 2006, Ex. H.) For the events of October 27, 2005, the Board recommended violations and fines to the three individual employees for operating without a license and to McSheffrey for conducting electrical work without a permit and employing three unlicensed electrical workers at the site.Id.
At the hearing on March 15, 2006, prior to the time that the Board issued its recommendation for the events occurring on October 27, 2006, the following exchange took place between Board Chairman William Lepore ("Board"), counsel for Plaintiffs ("Relco Attorney"), and Raimbault:
 "BOARD: Just to clarify for the record, Mr. Raimbault, did you happen to notice whether the PVC pipe was rated as electrical material?
 RAIMBAULT: Yes. BOARD: How do you know that?
 RAIMBAULT: Because it's ten-foot sections that they glued together. And when you glue them together and you're going to pull them in that manner, you have to glue them quite well, and you have to pull them in with the flanges going in the direction of the pull so that they don't pull apart. And they indicated to me that they were having some problems. And the electrical conduit was listed as electrical conduit. It's the standard 10-foot gray lengths of conduit which we know as electrical conduits.
 BOARD: So, what you observed was a standard electrical installation practice? RAIMBAULT: Yes.
 RELCO ATTORNEY: Mr. Raimbault, you did not observe any electrical conduit in the PVC pipe?
 RAIMBAULT: Electrical conductors you mean?
 RELCO ATTORNEY: Yes.
 RAIMBAULT: No." (March 15, 2006, DLT Hearing, Tr. at 42-43.) *Page 4 
The Director of the DLT acted on the Board's recommendations on April 20, 2005. (DLT Decision on Appeal, Apr. 20, 2006, Ex. H.) The Director issued McSheffrey fines for both the events: a fine of $950 for October 19, 2005; and a fine of $3,800 for the events of October 27, 2005. Id. Additionally, the Director upheld the fines of $500 to each of the three unlicensed workers. Id. The Director notified Plaintiffs that they could appeal the decision pursuant to § 42-35-15.
On May 17, 2006, Plaintiffs filed a complaint with this Court. Plaintiffs asserted in their complaint that the DLT decision should be reversed and cited several reasons. First, they argued that by imposing the fines and cease and desist order DLT investigators deprived them of their right to a hearing. Next, Plaintiffs argued the DLT did not have a basis for issuing the cease and desist order because Relco had obtained a permit from the City of Providence on October 26, 2005 which was consistent with the statutory requirements set forth on the Rhode Island website. Finally, Plaintiffs asserted that they should not have been cited for performing electrical work without a license because they were merely doing preliminary work at the site.
Less then a week later, on May 23, 2006, the DLT informed Plaintiffs that it was vacating, without prejudice, the fines and violations it had issued. The DLT then issued a notice to McSheffrey and the three affected workers of its intent to impose sanctions and afforded them the right to a hearing before any action would be taken. It appears that the DLT vacated the fines and violations and issued the notice in an effort to comply with the holding in a Superior Court decision, Unistrut Corp. v. State Department ofLabor and Training, No. 04-6702, 2006 WL 798903 (R.I. Super. Ct. March 28, 2006). InUnistrut, the Superior Court found that the procedure the DLT followed to issue fines violated § 42-35-9. *Page 5 
On February 20, 2008, Plaintiffs appeared before the Board for a hearing on the reissued violations. The hearing record included the transcript of the March 15, 2006 hearing and additional evidence.
During the February 20, 2008 hearing, the following exchange took place between Board Member Zuba ("Board") and Raimbault:
 "BOARD: I have a question of Mr. Raimbeault. On reading the testimony, it became apparent that there was a question on the type of PVC that was used, it was questionable being electronic or it came up PVC. Now, would this be consistent with the electrical conduit constructed of PVC material exclusively made for the electrical industry as listed and tested?
 RAIMBAULT: That is correct.
 BOARD: So there is no confusion that it is electrical pipe constructed of PVC and it is not the type used for plumbing?
 RAIMBAULT: That is correct." (Feb. 20, 2008, DLT Hearing, Tr. at 8.)
At the close of the hearing, the Board voted to dismiss the permit violation resulting from the incident on October 19, 2005, but[1]
voted unanimously to issue recommendations of violations for the events occurring on October 27, 2005. Id. at 40, 42-43. The Board noted,
 "based upon the testimony of the witnesses, the company on two occasions failed to pull a state permit prior to starting the electrical work. And it was at the Rhode Island campus in violation of 5-6-32. And again based upon the testimony, the company had three unlicensed employees installing electrical conduit on the dates involved in violation 5-6-2. Specifically on page 40, it comes to my attention that Mr. Raimbeault arrived at the soccer field and saw in the distance four men holding electrical conduit over their heads, feeding it into the ground as they were being pulled by another gentlemen. The way that I interpreted it, the feeding into the ground is installing electrical conduits on that particular job site." Id. at 40-41.
On February 25, 2008, the DLT issued a final decision. (DLT Decision on Appeal, Feb. 25, 2008.) The DLT affirmed the recommendations of the Board — dismissing the permit *Page 6 
violation for October 19, 2005, but upholding the violations and fines for October 27, 2005. Id. The decision contained findings of fact and notified Plaintiffs of their right to appeal the decision to this Court. Id.
Plaintiffs took a timely appeal from this decision by filing an Amended Complaint with this Court on March 17, 2008. They assert the DLT decision violated § 42-35-15 because it was arbitrary, capricious, and clearly erroneous. Specifically, Plaintiffs assert that they were not performing any work that could be characterized as electrical and thus, the violations for performing work without a license were against all the evidence in the record. Plaintiffs excuse their failure to obtain a State permit by contending that they relied on the State's website which did not clearly explain that a State permit was necessary. Pursuant to § 42-35-15(f), the Court granted Plaintiffs' request to present oral argument in support of their appeal, and this Court conducted that hearing on May 13, 2010. At that hearing, Plaintiffs reiterated their position that no electrical work was being conducted at the site. They argued that PVC pipe without wires running through it is merely a pipe, and not a conduit, even if the pipe will in the future serve as a conduit for electrical wires. (May 13, 2010, Super. Ct. Hearing). They concede that the installation of wires into the PVC Pipe would constitute a violation of the statute, but object to being fined for their initial preparatory work involving PVC Pipe that did not itself carry electricity.
Plaintiffs attempt to compare the PVC pipe in this case to the steel support structure referred to by our Supreme Court inUnistrut Corp. v. State Department of Labor and Training. In that case, the Court rejected the DLT's contention that the structure constituted an apparatus covered by G.L. 1956 § 5-6-2 (a)(1). Plaintiffs also cite the Superior Court Decision of Northeast Lightning Protection Systems v. StateDepartment of Labor and Training as a similar *Page 7 
example of the DLT's wrongful efforts to expand application of G.L. 1956 § 5-6-1 et seq. to companies not in violation of the statute. No. 05-3164, 2006 WL 13117 (R.I. Super. Ct. Jan. 3, 2006).
For its part, the DLT argues that the clear language of § 5-6-2 (a)(1) prevents Relco from installing conduit for the purpose of carrying electricity for light. It contends that Unistrut Corp. is distinguishable from the present controversy and maintains the agency properly interpreted the term conduit. Accordingly, the DLT argues the Court must defer to the agency's interpretation of the statute the General Assembly empowered it to implement.
 II Standard of Review
The Rhode Island Administrative Procedure Act chapter 35 of title 42 governs this Court's review of an administrative appeal. Section 42-35-15(g) of the Act sets forth that:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Thus, "factual findings of the administrative agency are entitled to great deference." Champlin's Realty Assoc. v. Tikoian,989 A.2d 427, 437 (R.I. 2010). Moreover, this Court must accord great deference to an administrative agency in interpreting a statute whose administration and enforcement have been entrusted to the agency. State v. Cluley, 808 A.2d 1098, 1103 (R.I. 2002). *Page 8 
This Court's review is limited to ensuring that legally competent evidence supports the agency's decision. Nickerson v.Reitsma, 853 A.2d 1202, 1205 (2004). Legally competent evidence is indicated by the presence of some or any evidence supporting the agency's findings. Environmental Scientific Corp. v. Durfee,621 A.2d 200, 208 (R.I. 1983). If such evidence exists, this Court is required to uphold the agency's conclusions. Id.
 III. R.I.G.L. § 5-6-2 — License
Plaintiffs assert they did not violate § 5-6-2 because they were not performing electrical work. Section 5-6-2 is entitled "Work for which license required." It provides in pertinent part:
 "(a)(1) No person, firm, or corporation shall enter into, engage in, solicit, advertise, bid for, or work at the business of installing wires, conduits, apparatus, fixtures, electrical signs, lightning protection equipment as defined in § 5-6-1, and other appliances for carrying or using or generating electricity for light, heat, fire alarms, as defined in chapter 28.25 of title 23, entitled "fire alarm systems", or power purposes, exclusive of low voltage wiring for heating/refrigeration equipment, or work at the business of removing and reattaching existing electrical meters, unless that person, firm, or corporation shall have received a license and a certificate for the business, issued by the state board of examiners of electricians of the division of professional regulation of the department of labor and training in accordance with the provisions set forth in this chapter. (Emphasis added).
 * * *
 (2)(b) Any person, firm or corporation which is required to apply for a permit from a local building official for any work required to be performed by a person licensed under the provisions of this chapter shall cause the work to be performed by a person licensed under the provisions of this chapter. . . ."
Pertinent especially to this appeal, § 5-6-2(a)(1) provides, "[n]o person . . . shall . . . engage in . . . installing conduits . . . for carrying or using electricity for light . . . unless that *Page 9 
person . . . shall have received a license . . . issued by the state." Conduit has been specifically defined as "a pipe, tube, or tile for protecting electric wires or cables."Merriam-Webster's Collegiate Dictionary 240 (10th ed. 2001);see also In re Harrison, 992 A.2d 990, 994 (R.I. 2010) (stating court must give words to clear statute their plain and ordinary meaning). Additionally, Article 352 of the National Electrical Code is specifically devoted to the "use, installation, and construction specifications for rigid polyvinyl chloride conduit (PVC)," and defines PVC Conduit as a "rigid nonmetallic conduit of circular cross section, with integral or associated couplings, connectors, and fittings for the installation of electrical conductors and cables." Mark W. Earley, National ElectricalCode Handbook, Art. 352, p. 400-05 (11th
ed. 2008). The clear and unambiguous language of the statute provides that installing conduit for electricity for lights requires a license. See § 5-6-2(a)(1); see also In re Harrison,992 A.2d 990, 994 (R.I. 2010) (stating court must give words to clear statute their plain and ordinary meaning); McKenna v.Williams, 874 A.2d 217, 232 (R.I. 2005) (noting that when statutory provision is clear it speaks for itself).
The Court rejects Plaintiffs' argument that the PVC pipe was not a conduit when it was being installed in connection with Relco's preparatory work. It is clear that the Plaintiffs incorrectly equate the term "conduit" with the word "conductor." (March 15, 2006, DLT Hearing, Tr. at 42-43.) As noted in the National Electrical Code, conduit is used "for the installation of electrical conductors." Mark W. Earley, National ElectricalCode Handbook, Art. 352, p. 400-05 (11th
ed. 2008). The terms are not synonymous. Indeed, Table 1, Chapter 9 of the National Electrical Code is devoted to the proper installation of conductors into conduit.Id. at Chapter 9, p. 1237 (observing a "pitfall associated with pulling conductors into conduit). The *Page 10 
Court finds that Plaintiffs were installing conduit for the purpose of using electricity for lighting at the Rhode Island College soccer field in contravention of § 5-6-2.
The undisputed record supports the Board's finding that three Relco employees were installing the conduit without the necessary licenses. (DLT Hearing March 15, 2006, T. 40.) Accordingly, this Court upholds this finding of fact by the Board because it is supported by the legally competent evidence. Cluley,808 A.2d at 1103 (noting court must give deference to agency interpretation of own statute).
Plaintiffs' reliance on the Rhode Island Supreme Court decision ofUnistrut Corp. v. State Department of Labor and Training is misplaced. 922 A.2d 93 (R.I. 2007). In Unistrut, a steel company tasked our Supreme Court with determining if a steel support structure constituted an "apparatus" for the purposes of § 5-6-2(a)(1). The DLT determined that the steel support structure — being installed by a steel company — used to support lighting and other electrical equipment was such an apparatus. The Court disagreed. Initially, our Supreme Court noted that although in a generic sense, the steel structure was an apparatus, it was not an "apparatus for carrying or using electricity." Id. at 101. The Court noted that no electrical components were attached to the structure and that it was being used merely for support, something for which § 5-6-2 does not require a license.
The present controversy is factually and legally distinguishable from Unistrut. Significantly, if the Court adopted Plaintiffs' argument — that installing the "PVC Pipe" was not covered by § 5-6-2 because no wires or conductors were present — the term "conduit" in § 5-6-2 would be reduced to "mere surplusage."[2]State v. DeMagistris, 714 A.2d 567, 573 (R.I. 1998). Moreover, the word "conduit" does not have such a generic definition as does "apparatus." *Page 11 Unistrut Corp., 922 A.2d at 101 (noting administrative body interpreted "apparatus" out of context). Indeed, as previously noted, conduit has a specific definition describing it as piping that protects wires or cables, and the National Electrical Code devotes an entire section to its proper installation and use. The Court disagrees with the narrow interpretation of the word "conduit" offered by Plaintiffs. The Court notes that the General Assembly listed two separate violations for performing two different tasks without a license, installing wires and installing conduit. Had the Legislature intended to exempt piping from the list of violations unless it contained electric wire, the two terms would have been combined in § 5-6-2.
Finally, the Court rejects Plaintiffs' reliance on the Superior Court Decision of Northeast Lightning Protection Systems v. StateDepartment of Labor and Training as equally unpersuasive. No. 05-3164, 2006 WL 13117 (R.I. Super. Ct. Jan. 3, 2006).Northeast Lightning merely stood for the proposition that protection system was outside the purview of § 5-6-1 et seq. because it was not used for "light, heat, fire alarms, or power purposes," but rather for intercepting "atmospheric charges and terminat[ing] them harmlessly at the ground." Id. at 7. In this case, Relco employees installed piping for the purpose of creating a conduit through which electrical wires would run for the purpose of lighting the Rhode Island College soccer field.
 IV R.I.G.L. § 5-6-25, § 5-6-2(b) — Permit
Relco additionally argues that it should not have been required to have a State of Rhode Island Permit as of October 27, 2006, because the State of Rhode Island website did not explicitly state that a permit was required. Relco contends that it took reasonable and diligent steps toward procuring a permit, and therefore, it should have been legally excused of the permit requirement as of October 27, 2006. *Page 12 
Currently, § 5-6-25 provides,
 [a]ll electrical work covered in this chapter, which is done in the state of Rhode Island and/or any city or town having rules and requirements for that work, shall be done in accordance with those rules and requirements. Failure of any licensee to do that work in that manner, or his or her failure or refusal to correct the work with reasonable promptness after notice by local inspection or enforcement authorities where the notice is required by law, when reported to the division of professional regulation, shall be grounds for suspension or revocation of the license, in the discretion of the division after proper notice and a hearing before and upon the recommendation of the board of examiners of electricians to the director of labor and training.
When Relco checked the State of Rhode Island website prior to commencing work on this project, however, the website provided, "Compliance with rules and requirements of city or town. — All electrical work covered in this chapter, which is done in any city or town having rules and requirements for that work, shall be done in accordance with those rules and requirements." (Pl. Mem. in Support of Motion to Vacate at pp. 14-15, Apr. 21, 2008, Ex. A.) Relco argues that the website implied that it only needed to meet municipal requirements and that a State permit was not necessary.
The Court need not reach this argument because it is clear that Relco had actual notice that the State required a permit. Relco received notice of this requirement on two occasions before October 27, 2005. On October 19, 2005, Luther cited Relco for performing electrical work without a State permit in violation of § 5-6-25.
Thereafter, an employee with the city of Providence apparently told a representative from Relco that the company needed a State permit. In spite of receiving the formal notice from Luther and the subsequent warning from the municipal worker, Relco continued working without obtaining a State permit. *Page 13 
The DLT's finding that Relco knew the State of Rhode Island required a permit for it to perform electrical work at the site yet chose to continue working anyway, despite the State requirement, is supported by reliable, probative, substantial evidence.
 V Conclusion
For the above reasons, this Court finds that the decision of the DLT did not prejudice substantial rights of Plaintiffs in violation of § 42-35-15. This Court affirms the DLT's finding that Relco installed conduit for carrying or using electricity for lighting without a permit and the required licenses. The Court affirms the DLT's finding that three of Relco's employees were installing conduit without the necessary license. The DLT supported its decision with substantial evidence, and the decision was neither arbitrary nor capricious. Accordingly, Plaintiffs' appeal is denied. Counsel shall submit an appropriate order consistent with this Decision.
[1] The October 19, 2005 violation is not before this Court .
[2] Indeed, Unistrut may have had a far greater impact on this Decision had the word "conduit" not been listed in the statute. If this were the case, it is possible this Court would have to determine if the "conduit" was an "apparatus" covered by the statute.