In re PETER G. et al.

No. 90–24–M.P.

Supreme Court of Rhode Island.

July 13, 1990.

Janet Galligan, Department of Children and Their Families, Michael McCann, CASA, for plaintiffs.

Richard Casparian, Public Defender, Catherine Gibran, Asst. Public Defender, for defendant.

## OPINION

SHEA, Justice.

This matter is before the Supreme Court on a petition for the issuance of a writ of certiorari to review an order of the Family Court granting a motion for emergency review filed by the Department of Children and Their Families (DCF). We quash the order of the Family Court and remand the case for a transfer hearing.

The facts of this case insofar as they are pertinent to this appeal are as follows: On January 12, 1990, DCF filed a motion for emergency review, which was heard the same day, requesting the Family Court's permission for Peter G. to be moved permanently with his foster parents to New Jersey. The petitioner and natural mother of the child received no notice of the hearing and was unable to attend the hearing be-

cause her attorney could not locate her.[1] At the hearing the mother's attorney strongly objected to the motion on the grounds that DCF had not provided adequate notice of the hearing and State law mandated that a transfer hearing be conducted before the child could be moved out of the State.

In support of the motion DCF attached a report dated January 5, 1990, and prepared by a clinical psychologist. The report indicated that the child was receiving excellent care while placed with his foster family. In addition the psychologist stated:

"I would strongly recommend that Peter continue to live with the (foster family) and that his placement not be interrupted. Separation or removal from this family would be exceedingly detrimental to Peter from a psychological point of view."

After hearing arguments and reviewing this report, the trial justice granted DCF's motion. On January 12, 1990, the mother's appellate counsel sought a stay of the Family Court order in this court. The motion for stay was denied principally because by then the child and his foster parents were on their way to New Jersey. This court subsequently granted the mother's petition for issuance of a writ of certiorari on January 19, 1990.

On appeal the mother argues that the Family Court contravened G.L.1956 (1981 Reenactment) § 14-1-65, as amended by P.L.1984, ch. 74, § 1 when it allowed the child to be relocated out of the State. This statute provides in part:

"Prior to authorizing the placement of a child entrusted to the control of the department * * * in an out-of-state child caring facility, other than the home of a relative, the department shall petition the family court for a placement hearing. The family court shall grant approval for the placement if the following facts are found:

1. At the time of the hearing a petition to terminate the parental rights of the mother was pend-

ing in the Family Court.

(a) That no suitable in-state facilities are available for the placement of the child;

(b) That the child will receive an individualized treatment plan including, but not limited to, appropriate clinical treatment, education, training and rehabilitation.

(c) That the proposed placement is in the best interest of the child."

■ The Department of Children and Their Families suggests that § 14–1–65, which refers to "child caring facility," is not applicable to foster families. There is nothing in the statute that would support DCF's narrow interpretation of the term "child caring facility." The Legislature's clear intent when enacting this statute was to ensure that the decision to place a child in DCF's care outside the State be made only after a careful and comprehensive examination of the circumstances of the individual case. To allow DCF to place children outside the State with no judicial oversight would violate both the spirit and the letter of this statute.

■ The next argument put forth by DCF is that even if a placement hearing was required, the hearing conducted on January 12, 1990, satisfies the requirements of the statute. The record, however, does not support this contention. The language of the statute mandates that DCF petition the Family Court for a placement hearing. The emergency motion filed in this case does not satisfy this requirement. After the appropriate petition has been filed the Family Court may approve the proposed placement only if it is found that there is no suitable in-state facility; the child will receive individualized treatment and the placement is in the best interest of the child. A review of the transcript of the hearing conducted on January 12, 1990, indicates that no such findings of fact were made.

This failure to make the requisite findings of fact cannot be attributed to the trial justice. By its own admission DCF was aware of the foster family's impending move but chose not to take action until the eleventh hour. Apparently the foster fa-

ther had moved to New Jersey several months before. The foster mother had also secured employment in that State. Moreover the report of the psychologist that any separation from the foster family would be harmful to Peter was dated January 5, 1990, a full week before the emergency motion. Faced with a situation in which the family's relocation was a fait accompli and presented with the report of the psychologist, the trial justice had little choice but to allow the child to leave the State.

■ The actions of DCF in this case also appear to have violated the Rules of Juvenile Proceedings. The instant motion was served on the mother's counsel on the day of the hearing and the very day that the motion was scheduled to be heard. Rule 24(c) of the Rules of Juvenile Proceedings contains a five-day notice requirement for the hearing of motions. This motion was an "emergency" only because DCF chose to wait until the last possible moment to take action. Clearly DCF's action virtually ensured that the hearing conducted on January 12, 1990, would not comply with the requirements of § 14–1–65.

■ In addition, the mother's due process rights were violated when she was denied adequate notice of this hearing. "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599, 606 (1982). Essential to the due process right to be heard is adequate notice reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950). This court has stated that the foundation of due process rests on an opportunity to be heard in a meaningful manner at a meaningful time. *Leone v. Town of New Shoreham*, 534 A.2d 871 (R.I.1987). Notice on the day of

the hearing clearly fails to satisfy the requirements of due process because it does not provide the mother with an opportunity to be heard in a meaningful manner.

Finally the mother argues that the Interstate Compact on the Placement of Children, G.L.1956 (1984 Reenactment) § 40–15–1, was breached in this case. The compact provides that if a child in State care is to be transferred to another State, then appropriate notice must be given to the recipient State:

"(a) No sending agency shall send, bring, or cause to be sent or brought into any other party state any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this article and with the applicable laws of the receiving state governing the placement of children therein.

"(b) Prior to sending, bringing or causing any child to be sent or brought into a receiving state for placement in foster care or as a preliminary to a possible adoption, the sending agency shall furnish the appropriate public authorities in the receiving state written notice of the intention to send, bring, or place the child in the receiving state.

" * * *

"(d) The child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child." Section 40–15–1, art. III(a), (b), & (d).

From the record now before the court it is impossible to determine if DCF complied with the requirements of § 40–15–1. Consequently this issue must be explored when the transfer hearing is conducted.

For the reasons stated, the petition for certiorari is granted, the decision of the Family Court is quashed, and the papers of the case are remanded for further proceedings consistent with this opinion.