DECISION
The Appellants — Vincent Corsi Jr. ("Corsi") and Quality Swimming Pools Spas, Inc. ("Quality Swimming") (collectively "Appellants") — appeal the July 14, 2010 Final Agency Decision and Order of the State of Rhode Island Contractors' Registration and Licensing Board (the "Board"), directing the Appellants to pay restitution in the amount of $24,150 and to pay additional fines. Jurisdiction in the instant matter is pursuant to G.L. 1956 § 42-35-15.
 I Facts and Travel
On September 2, 2008, Corsi and William Holmes ("Holmes") entered into a written contract ("Contract") for the installation of an in-ground swimming pool at Holmes' residence located at 26 Riverdale Avenue, West Warwick, Rhode Island. Pursuant to the terms of the Contract, Quality Swimming would excavate for, and install, a Matrix 48' polymer wall in-ground pool. The scope of the work to be performed was defined in the Contract. The Contract *Page 2 
stated that work would commence in the fall of 2008 and resume in the spring of 2009. Appellants last day on the job was July 10, 2009.
Holmes was not satisfied with the quality of the work. He sent Corsi an e-mail correspondence listing fifteen specific complaints with respect to the installation of the in-ground pool. In the e-mail, Holmes expressed his dissatisfaction with the cement work around the in-ground pool.
On August 6, 2009, the Board received a claim against the Appellants, filed by Holmes. The claim alleged that Appellants had breached the contract and performed negligent and improper work regarding the installation of the in-ground swimming pool.
In September 2009, an inspection of the site was scheduled, and thereafter, Senior State Building Code Official and Board Investigator Richard Case ("Investigator Case") documented his findings in an investigative report ("Investigative Report"). The Investigative Report notes in pertinent part that
 " • Claimant paid respondent $25,875 on a $25,875 contract to install an in-ground swimming pool.
 • Work started October 2008, last day of work July 2009.
 • Board inspection was made on September 23, 2009.
 • Deficiencies were found during inspection.
 • The deficiencies expressed on the claim are valid.
 • Respondent stated to me that there was nothing wrong with the concrete work.
 • I concur with claimant that concrete work is not to industry standards.
 • Inspections required by the West Warwick Building Official were missed.
 • Instructed claimant to have Building Official[']s Department inspect electrical, pool construction.
 • Claimant has notified the Board that respondent had 4 to 6 employees at site respondent does not list having employees or worker[s'] compensation with the Board.
 • Pool has never been open for use." See id. *Page 3 
The claim then was forwarded for an Administrative hearing, which was held on October 22, 2009. The notice of the hearing was mailed to the Appellants at 76 Railroad Avenue, Johnston, Rhode Island. The Appellants did not receive notice of the October 22, 2009 hearing and, as a result, were not present at the hearing. Holmes and Hearing Officer Robert Ricci ("Hearing Officer") did attend the hearing. During the hearing, the Hearing Officer considered the Investigative Report of Investigator Case; the Agreement; a CD with photos of the pool submitted by Holmes; e-mail correspondence between Corsi and Holmes; and an estimate for the cost of repairs made by "The Pool Source." Based on this evidence, the Hearing Officer found that Corsi breached the contract and was negligent in performing his work. A Proposed Default Order was also entered.
On December 11, 2009, the Proposed Default Order was issued and mailed to the Appellants by the Hearing Officer. The Order directed Appellants to pay Holmes the sum of $24,150 and assessed fines. (App's Ex. 5.) The $24,150 in damage award was based on the estimate provided to the Hearing Officer by "The Pool Source." (App.'s Ex. 6.)
On December 15, 2009, Appellants appealed the Proposed Default Order on the grounds that Appellants were not notified of the October 22, 2009 hearing. (App.'s Ex. 7.) Appellants claimed that the notice was sent to a former address. Based on Appellants'"[w]ritten exceptions that ha[d] been timely filed," the Executive Director scheduled a hearing before the full Board on January 13, 2010. Notice of the hearing was again sent to Appellants at an incorrect address. The Board held the hearing on January 13, 2010. Appellants failed to appear. As a result, on February 19, 2010, the Board issued a Final Order. The Final Order was based on the evidence and testimony presented to the Hearing Officer at the October 22, 2009 hearing and contained the identical findings of fact and analysis. (App.'s Ex. 9.) *Page 4 
On March 15, 2010, Appellants filed a Motion to Vacate the Final Order of February 19, 2010 and to appeal the Proposed Order based on lack of notice and their inability to present evidence and testimony. The Motion to Vacate was heard by the Board on April 14, 2010. (App.'s Ex. 10.) At this hearing, the Board acknowledged that administrative deficiencies existed in their failure to provide Appellants with notice of the prior hearings and vacated the Final Order. A new hearing was scheduled for July 14, 2010. At that hearing, the Board agreed to hear Appellants' appeal of the Proposed Order. The Board noted that it would not rehear any issue or allow any new testimony or evidence but, instead, would "only accept arguments as to why a wrong decision may have been reached." (7/14/20 Tr. at 3-4, 11-13, 19.)
At the July 14, 2010 hearing, the Board reviewed the evidence submitted at the prior hearings, as well as the exceptions filed by Appellants. During the hearing, Appellants agreed that the concrete work performed was unsuitable. Appellants argued that Holmes had a duty to mitigate the damages incurred by maintaining the pool. When asked whether the pool was in use, claimant Holmes responded that, "No, it still hasn't been. I have sand still in back I'm storing. I have ladders and railing that was never installed when they did the cement work." (7/14/2010 Tr. at 18.) Based on the testimony proffered by Holmes, the Board agreed that the pool did not need to be filled, finding that "[i]f the owner would have taken it upon himself and filled the pool and start those pumps, based on his contention that they were installed improperly and the piping was wrong and voided the warranty to the pump, then he shouldn't do it." (7/14/2010 Tr. at 18-19.) Furthermore, a Board member noted that "[i]f you look at . . . how many times the homeowner attempted to contact, by e-mail, and asking for a return phone call, every two days over a period of time, then it kind of takes away the homeowner's responsibility in my mind. He tried to get the contractor to communicate with him." (7/14/2010 Tr. at 22-23.) *Page 5 
At the conclusion of the hearing, the Board concurred with Investigator Case's findings, including that the "concrete work is not to industry standards." (7/14/2010 Tr. at 27.)
After consideration of both parties' testimony and considerable discussion on the matter, the Board voted to uphold the Hearing Officer's decision. On August 11, 2010, the Final Order was served on Appellants. Appellants were ordered to pay claimant Holmes $24,150 and were assessed fines totaling $3,500. On September 9, 2010, Appellants timely filed the instant action pursuant to § 42-35-15.
 II Standard of Review
This Court "sits as an appellate court with a limited scope of review" when reviewing the decisions of an administrative agency, such as the State of Rhode Island Contractors' Registration and Licensing Board.Mine Safety Appliance Co. v. Berry,620 A.2d 1255, 1259 (R.I. 1993). Appellate review of agency actions is governed by the Rhode Island Administrative Procedures Act ("APA"), § 42-35-1, et seq. Islein v. Retirement Bd. of Employees'Retirement System of Rhode Island,943 A.2d 1045, 1048 (R.I. 2008) (citing Rossi v. Employees'Retirement System of Rhode Island, 895 A.2d 106, 109 (R.I. 2006)). The applicable standard of review codified at § 42-35-15(g) provides:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inference, conclusions or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or *Page 6 
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Sec. 42-35-15(g).
"In essence, if `competent evidence exists in the record, the Superior Court is required to uphold the agency's conclusions.'" Auto BodyAssociation of Rhode Island v. State of Rhode Island Department ofBusiness Regulation et al., 996 A.2d 91, 95 (R.I. 2010). Accordingly, this Court defers to the administrative agency's factual determinations provided that they are supported by legally competent evidence.Arnold v. Rhode Island Department of Labor and Training Board ofReview, 822 A.2d 164, 167 (R.I. 2003). Additionally, when examining the certified record, this Court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Interstate Navigation Co. v. Dis. of Pub. Utils. Carriersof R.I., 8724 A.2d 1282, 1286 (R.I. 2003) (citations omitted).
The State of Rhode Island Contractors' Registration and Licensing Board in this case utilizes a two-tier review process in which grievances are heard first by a hearing officer, who issues a written decision that is submitted to the Board. Second, the Board considers the decision, along with any further briefs or arguments, and renders his or her own decision. This two-step procedure has been likened to a funnel.Environmental Scientific Corp. v. Durfee,621 A.2d 200, 207-08 (R.I. 1993). The hearing officer, at the first level of review, "sits as if at the mouth of the funnel" and analyzes all of the evidence, opinions, and issues. Id. The Board stationed at the "discharge end" of the funnel — the second level of review — does not receive the information considered by the hearing officer first hand. Id. Our Supreme Court has held, therefore, that the "further away from the mouth of the funnel that an administrative official is . . . the more deference should be owed to the fact finder." Determinations of credibility by the hearing officer, for example, should not be disturbed unless they are "clearly wrong."Id. at 206. *Page 7 
Accordingly, this Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Baker v. Dept. of EmploymentTraining Bd. of Review, 637 A.2d 360, 363 (quoting Milardo v.Coastal Res. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981)). However, because most agencies are presumed to have knowledge and expertise in their respective fields, they have wide discretion in determining the weight or probative value to be given the testimony of the expert witness. Stein, Administrative Law § 28.03. The Court also reviews an agency decision to determine whether it was "otherwise occasioned by error of law." Tierney v. Department of Human Serv.,793 A.2d 201, 213 (R.I. 2002).
With regard to questions of law, the administrative agency's decision is not binding on the Court, whose review is de novo.Narragansett Wire Co. v. Norberg,118 R.I. 596, 376 A.2d 1, 6 (1977). However, in statutes where the legislature has empowered an administrative agency to enforce, the agency's "interpretation of the statute as applied to a particularly factual situation" should be accorded "weight and deference as long as that construction is not clearly erroneous or unauthorized." LaborReady Northeast, Inc. v. McConaghy, 849 A.2d 340, 344 (R.I. 2004) (quoting In re Lallo, 768 A.2d 921 (R.I. 2001)). This deference is owed even when there are differing interpretations that reasonably could be applied to the statute. Id.
 III State of Rhode Island Contractors' Registration and Licensing Board Statutory Scheme and Administrative Regulations
The General Assembly has established the State of Rhode Island Contractors' Registration and Licensing Board. The Board has the power to "investigate the activities of any *Page 8 
person engaged in the building and construction industry to determine compliance with this chapter." Sec. 5-65-16(a). Additionally, the Board has the power to
 "(1) Award monetary damages and fines provided by this chapter;
 (2) Order specific performance of any contract; and
 (3) Provide any other relief and/or remedy provided by this chapter and the contractors' registration board's rules and regulations." Sec. 5-65-16(f)(1)-(3).
The Board is authorized to "promulgate rules and fines to carry out the provisions of this chapter in accordance with the Administrative Procedures Act, chapter 35 of title 42." Sec. 5-16-17. Given the Board's limited legislative power, it must confine its conduct to its expressly defined channels through which the legislature has authorized it to act.
Pursuant to the powers granted to it by the General Assembly, the Board has promulgated regulations under the Administrative Regulations and Constructions Standards of the Contractors' Registration and Licensing Board, Department of Administration ("Regulation"). Agency regulations that are promulgated pursuant to an express grant of statutory authority, like the Board's Regulations, have the "force of law." Henry v. Earhart, 553 A.2d. 124, 127 n. 1 (R.I. 1989) (quoting Lerner v. Gill, 463 A.2d 1352, 1358 (R.I. 1983)).
The Board has promulgated a specific set of rules governing the filing of claims. Rule 4.0(1) notes that
 "Claims will be accepted only against registered contractors. . . . For owner claims, employee claims, contractors claims, subcontractor claims and testing claims the person against whom the claim is filed will be considered registered if that person was registered during all or part of the work period. . . . For material claims, the person against whom the claim is filed will be considered registered if one or more invoices or payroll records involve material delivered while the person was registered. Damages will be awarded only for material delivered within the period of registration, and when filed by registered contractors. . . . If a claim is a contractor claim or a subcontractor claim, the claimant must have been registered at the time the bid was made or *Page 9 
the contract was entered and continuously throughout the work period before the claim will be accepted. The registration requirement for claimants does not apply to persons who are exempt from registration under Section 5-65-2(7)." (Regulation § 4.0(1)).
Claim types that may be brought include those by a "(1) Homeowner for negligent and improper work[,] (2) Homeowner for breach of contract[,] (3) Homeowner when mechanics lien is filed[,] [and] (4) Contractor against a subcontractor." (Regulation § 4.1.) In order to resolve a claim involving monetary damages, the Board may "issue a notice of hearing to parties to give the opportunity for a hearing." (Regulation § 4.4(9).) Furthermore, when the Board determines that a registrant — against whom a claim has been filed — has breached a contract or performed negligent work, the Board may recommend a resolution consistent with the terms of the contract or with generally accepted building and industry standards. (Regulation § 4.4(5).)
The Board has established a dual scrutiny system to hear these matters. First, the "hearing officer hears testimonial and documentary evidence from all affected parties. . . . Then, "the hearing officer analyzes the evidence, opinions and concerns of which he or she has been made aware and issues a decision." Environmental Scientific,621 A.2d at 207. Regulation § 4.9(4) specifies the procedure in which evidence may be submitted to the Board. Regulation § 4.9(4) states in pertinent part that
 "At the meeting of the members of the Board, the Board will consider evidence received at the hearing and exceptions and written or oral argument for or against the proposed order, but the Board will not consider new or additional evidence." (Regulation § 4.9(4).)
Additionally, Regulation § 4.4(14) provides:
 "If the registrant, after being properly served notice of a hearing in accordance with these rules, fails to appear at a hearing, the Commission will issue a default order based upon the claimants' representation of a prima facie case. The only exceptions will be *Page 10 
those situations in which the registrants['] failure to appear was caused by circumstances outside the registrants['] control. At the discretion of the Executive Director if cause is beyond the control of the registrant, a new Administrative hearing may be schedule [sic]." (Regulation § 4.4 (14).)
Based on evidence received at the hearing, the Hearing Officer will prepare findings of fact and conclusions, and will issue a proposed order. The proposed order may direct the registrant to pay monetary damages to the claimant, send the contractor back to repair, order a combination of monetary damages and repair work, or dismiss the claim. The Board may consider any amounts due and unpaid to the registrant from a claimant under the terms of the contract and may reduce any proposed award by that amount. (Regulation § 4.4(16).)
A contractor may file written exceptions if he or she believes that at the Board has made a procedural error or that the proposed order is not supported by evidence received at the hearing or for any other reason. See Regulation § 4.9(1). After a hearing, the members of the Board may affirm the proposed order and findings of fact, modify either or both, or send the case back to a new hearing. Unless the case is sent back to a new hearing, the Board will issue a final order.See Regulation § 4.9(5). It is from this final Decision issued by the Board that the aggrieved party in the instant matter is appealing.
 IV Review of the Board's Decision
The issue presented is one of due process. Appellants put forth three arguments in support of their appeal: the Board's Decision and the Hearing Officer's determinations were made upon unlawful procedure; that reliable, probative and substantial evidence was improperly excluded to their detriment; and the decision of the Board and the determinations made by the *Page 11 
Hearing Officer were affected by error of law. The Board argues that the Decision was made upon lawful procedure.
 A Unlawful Procedure
Appellants argue that the decision made by the Board was in violation of § 42-35-9(a), which allows all parties in any contested case to be afforded an opportunity to respond and present evidence and arguments on all issues involved. The Board conversely contends that Appellants were given an adequate opportunity to respond and present evidence regarding the issues involved.
The record reveals that the Board provided Appellants with inadequate notice in violation of § 42-35-9(a). Section 42-35-9(a) provides that "[i]n any contested case, all parties shall be afforded an opportunity for a hearing after reasonable notice." Reasonable notice shall include: "(1) A statement of the time, place, and nature of the hearing; (2) A statement of the legal authority and jurisdiction under which the hearing is to be held; (3) A reference to the particular sections of the statutes and rules involved; [and] (4) a short and plain statement of the matters inserted. . . ." Sec. 42-35-9(b)(1)-(4). "There and simple requirements are obviously intended to assure that a party is apprised of the nature of the hearing so that he can adequately prepare." Correira v. Norberg,120 R.I. 793, 801, 391 A.2d 94, 98 (1978).
In this case, the Board sent notice of the October 22, 2009 and January 13, 2010 hearings, but failed to send the notice to the proper address. This lack of notice was caused by the Board's administrative deficiencies, such as failure to update the address in the electronic database, not by Appellants. (7/14/10 Tr. at 11.) As a result, Appellants failed to appear at the hearings and were therefore unable to present evidence or testimony.See Regulation § 4.9(4). *Page 12 
The Board acknowledged the administrative deficiencies and granted Appellants' Motion to Vacate the Final Order; however, the Board again failed to provide Appellants with an opportunity to be heard at the July 14, 2010 hearing. At the July 14, 2010 hearing, the Board refused to consider Appellants' evidence and testimony. (7/14/20 Tr. at 4, 11-13, 19.) In addition, the Board's decision did not include any evidence or testimony presented by Appellants at the July 14, 2010 hearing. The Board's decision referred solely to the Hearing Officer's Proposed Default Order and the Board's Final Order from the January 13, 2010 hearing, both of which were based on the findings and conclusions of the Investigative Report prepared by Investigator Case. (App's Exs. 5, 9.) Since § 42-35-9(a) requires parties to be afforded an opportunity for hearing and to present evidence, the Final Order of the Board on August 11, 2010, which was upheld at the July 14, 2010 hearing, was issued in violation of § 42-35-9(a).
It is a well-established principle that a fair trial in a fair tribunal is a basic requirement of due process. In re Murchison,349 U.S. 233, 236, 75 S. Ct. 623, 625 (1995). This requirement is as applicable to administrative agencies as it is to the court.Davis v. Wood, 427 A.2d 332 (R.I. 1981). "Essential to the due process right to be heard is adequate notice reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In re Peter G.,577 A.2d 996 (R.I. 1990). "[T]he foundation of due process rests on an opportunity to be heard in a meaningful manner at a meaningful time."Id.; Millett v. Hoisting Engineers' Licensing Division of theDepartment of Labor, 119 R.I. 285, 296, 377 A.2d 229, 235-36 (1977).
Here, the Board's failure to properly serve notice of the hearings and the Board's refusal to consider Appellants' evidence and testimony at the July 14, 2010 hearing clearly fails to satisfy the requirements of due process. While Appellants provided an argument at the hearing *Page 13 
on July 14, 2010, this hearing was merely a formality as the Board refused to consider any evidence presented by Appellants.See, e.g., Foster-Glocester Reg'l Sch. Comm. v. Bd. of Review, Dept.of Labor Training, 854 A.2d 1008, 1020 (R.I. 2004) (where a board abused its discretion when it admitted a transcript into evidence but refused to consider the transcript in reaching its decision); cf.Bourque v. Dettore, 589 A.2d 815, 823 (R.I. 1991) (Plaintiffs in an administrative hearing are "entitled to an opportunity to be heard at a meaningful time and in a meaningful manner."). Here, Appellants have not been provided with an opportunity to be heard in a meaningful way. Accordingly, the Final Order is reversed and remanded to the Board for a new hearing.
 IV Conclusion
For the reasons stated in this Decision, this Court finds that the Contractors' Registration and Licensing Board's Final Order was made upon unlawful procedure and affected by error of law in that it violated the due process rights of Appellant Vincent Corsi Jr. and Quality Swimming Pools Spas, Inc. Accordingly, the Final Order of the Contractors' Registration and Licensing Board's is reversed and the matter is remanded to the Board for a new hearing. Counsel shall prepare the appropriate order for entry.

 *Page 1